Susan STAMERRO, Appellee,

v.

Ronald D. STAMERRO, Appellant.

Superior Court of Pennsylvania.

Argued April 6, 2005.
Filed Dec. 21, 2005.

Carolyn R. Mirabile, Norristown, for appellant.

Harvey P. Abramson, Holland, for appelle.

Before: STEVENS, TODD, and GANTMAN, JJ.

OPINION BY GANTMAN, J.:

¶ 1 Appellant, Ronald D. Stamerro ("Husband"), appeals from the order entered in the Bucks County Court of Common Pleas, which denied his petition to modify his contractual alimony obligation to his former wife, Susan Stamerro ("Wife"). We affirm.

¶ 2 The relevant facts and procedural history of this case are as follows. The parties married in November 1978. There were two children born of the marriage, K.S., born January 11, 1983, and R.S., born September 15, 1988. The parties separated in December 1998. On January 11, 1999, Wife filed a complaint in divorce. Effective June 2, 1999, the court ordered Husband to pay $2200.00 per week, $1200.00 in spousal support and $1000.00 in child support. On January 6, 2000, Husband filed a petition to reduce child support, because his annual bonus would be eliminated or reduced significantly. On January 20, 2000, the parties, represented by counsel, entered into an agreed order before the court. The order encompassed a comprehensive marital agreement, which included a reduction in Husband's child support to $800.00 per week, and the terms of post-divorce alimony as follows:

> The parties are agreed that alimony shall be payable effective today at the rate of $1,200.00 per week. Said alimony shall be payable for a period of ten years. If during the period of between five and ten years [W]ife were to cohabitate or remarry, then said remarriage or cohabitation would be the basis for the termination of the alimony. Wife's cohabitation or remarriage within the first five years of the terms of alimony shall not be the basis for a termination of the alimony. The alimony shall sooner terminate upon the death of either party. The alimony shall be nonmodifiable in amount for so long as [H]usband's income is no more than $600,000.00 in any one calendar year including any and all income, bonus income, regular income, but not including distribution of his deferred compensation account or his profit-sharing principal amount as previously stated, or in the event that his income is less than $200,000.00. Just to restate that, the alimony is non-modifiable unless [H]usband's income is greater than $600,000.00 or less than $200,000.00 in any given year.

(N.T. Agreed Order, 1/20/00, at 12). The court clarified that the amount of income referred to gross income. (*Id.* at 12–13).

The alimony agreement was incorporated, but not merged, into the parties' divorce decree, entered on February 1, 2000.

¶ 3 On October 16, 2000, Husband again filed a petition to reduce child support. On October 24, 2000, Wife filed a cross petition for increased support. The court held a hearing on March 13, 2001. On May 29, 2001, the court entered an order upon the parties' stipulation, which reduced Husband's child support payment to $525.00 per week effective July 4, 2001, because the older child had reached the age of emancipation. The previous alimony payment remained in effect.

¶ 4 On December 10, 2003, Husband filed another petition to reduce his child support and alimony obligations, alleging his income had decreased substantially since entry of the court's previous order. On February 20, 2004, the Master, in conjunction with the Support Officer, held a conference. The Master recommended denial of Husband's petition to reduce alimony based on the following findings of fact:

## CIRCUMSTANCES AT ENTRY OF ORDER

Wife was unemployed at the time of the parties' divorce. She was a homemaker and primarily responsible for raising the parties' two children. She last worked as a dental hygienist in 1987.

Husband was the senior vice-president of sales for Mamiye Brothers in New York. Between 1995 and 2000, [H]usband had earned between $350,000.00 and $400,000.00 gross per year.

## CURRENT CIRCUMSTANCES

Wife's circumstances have not changed, she is still unemployed, she is still a homemaker and has primary responsibility for the parties' two children.

When the parties' older child was removed from the support order in 2001, [W]ife was assigned an earning capacity of $1,083 net per month.

Husband voluntarily left his New York City employment in October 2001. Husband's attorney stated that the sales department had suffered reductions of 25 percent in two consecutive years. However, the alleged adverse business conditions never affected [H]usband's pay.

Husband remarried in October 2001 and moved to Florida. Husband and his current wife run a real estate business, which is technically owned by the new wife's father. Husband claimed he earned $29,000.00 from the real estate business in 2002 and $83,000.00 from the real estate business in 2003. In 2002, Husband also received $42,000.00 from his former company in the form of a bonus from the prior year. Husband's attorney stated that [H]usband's current income is $83,000.00 gross per year.

(Report of the Master, filed March 1, 2004, at 2). On March 4, 2004, Husband filed a motion for a trial *de novo* solely on the issue of alimony. After a hearing on September 23, 2004, the Domestic Relations Support Officer recommended denial of Husband's petition. On October 21, 2004, following the *de novo* trial, the court entered an order denying Husband's petition for reduced alimony payments. Appellant filed a motion for reconsideration and notice of appeal. The motion for reconsideration was deemed denied and the appeal went forward.

¶ 5 On appeal, Husband raises one issue: WHETHER [THE] TRIAL COURT MAY PROPERLY DISMISS [HUSBAND'S] PETITION TO MODIFY ALIMONY WHERE THERE IS A VALID PROPERTY SETTLEMENT AGREEMENT WITH CLEAR AND UNAMBIGUOUS TERMS PROVIDING FOR MODIFICATION OF ALIMONY IF [HUSBAND'S] INCOME DROPS BELOW A PARTICULAR

DOLLAR AMOUNT IN A CALENDAR YEAR, THERE IS NO REFERENCE IN THE AGREEMENT TO EARNING CAPACITY OR VOLUNTARY REDUCTION OF INCOME, [HUSBAND] PROVIDES SUBSTANTIAL EVIDENCE OF THE REQUISITE DROP IN INCOME IN A CALENDAR YEAR, AND [WIFE] PROVIDES NO EVIDENCE CHALLENGING [HUSBAND'S] DROP IN INCOME OTHER THAN MERE CONJECTURE, DESPITE NUMEROUS OPPORTUNITIES FOR DISCOVERY.

(Husband's Brief at 4).

■■■ ¶ 6 Private support agreements are subject to contract principles and are enforceable in an action at law for damages or in equity for specific performance. *Nicholson v. Combs,* 550 Pa. 23, 42, 703 A.2d 407, 417 (1997). The action at law for damages might include the unpaid amount of support plus interest, whereas relief in equity for specific performance seeks an order directing the payor to comply with his future support obligations under the agreement. *Id.* "The powers of a domestic relations judge are plenary and the function is that of a law judge or equity chancellor as the case demands." *Horowitz v. Horowitz,* 411 Pa.Super. 21, 600 A.2d 982, 984 n. 1 (Pa.Super.1991).

■■■ ¶ 7 When interpreting a marital settlement agreement, "the trial court is the sole determiner of facts and absent an abuse of discretion, we will not usurp the trial court's fact-finding function." *Chen v. Chen,* 840 A.2d 355, 360 (Pa.Super.2003), *appeal granted in part,* 578 Pa. 433, 853 A.2d 1011 (2004).[1] On appeal from an order interpreting a marital settlement agreement, we must decide whether the trial court committed an error of law or abused its discretion. *Tuthill v. Tuthill,* 763 A.2d 417, 419 (Pa.Super.2000) (*en banc*), *appeal denied,* 565 Pa. 675, 775 A.2d 808 (2001).

"[J]udicial discretion" requires action in conformity with law on facts and circumstances before the trial court after hearing and due consideration. Such discretion is not absolute, but must constitute the exercises of sound discretion. This is especially so where, as here, there is law to apply. On appeal, a trial court's decision will generally not be reversed unless there appears to have been an abuse of discretion or a fundamental error in applying correct principles of law. An "abuse of discretion" or failure to exercise sound discretion is not merely an error of judgment. But if, in reaching a conclusion, law is overridden or misapplied, or the judgment exercised is manifestly unreasonable or lacking in reason, discretion must be held to have been abused.

*In re Deed of Trust of Rose Hill Cemetery Ass'n Dated Jan. 14, 1960,* 527 Pa. 211, 216, 590 A.2d 1, 3 (1991) (internal citations omitted). *See also Miller v. Sacred Heart Hosp.,* 753 A.2d 829, 832 (Pa.Super.2000). "Because contract interpretation is a question of law, this Court is not bound by the trial court's interpretation." *Chen, supra* at 360. "Our standard of review over questions of law is *de novo* and to the extent necessary, the scope of our review is plenary as [the appellate] court may review the entire record in making its decision." *Kripp v. Kripp,* 578 Pa. 82, 91 n. 5, 849 A.2d 1159, 1164 n. 5 (2004). However, we are bound by the trial court's

---

1. The Supreme Court granted allowance of appeal limited to the following issue: "Did the trial court and the Superior Court err in determining that the intervener [the parties' child] is a third party beneficiary of the property settlement agreement entered into between her parents?" *Id.*

credibility determinations. *Wade v. Huston,* 877 A.2d 464 (Pa.Super.2005).

¶ 8 Husband argues the parties' marital agreement comprises a clear and unambiguous contract, which the trial court should have enforced as written. Husband asserts the terms of the agreement automatically entitle him to a reduction in alimony when his income, as defined in the agreement, is less than $200,000.00 gross per calendar year. Husband claims he presented substantial, unrebutted evidence to prove the requisite reduction in gross income during 2003. Husband maintains the agreement does not reference child support, earning capacity, voluntary reduction of income, proof of a material and substantial change in circumstances, or the Divorce Code definition of income as a basis for modifying his alimony obligation. Husband complains the trial court improperly modified the plain meaning of the marital agreement when it considered these matters. Specifically, Husband contends the court should not have considered the reason for his income reduction, and in any case, the evidence of record does not substantiate the court's finding that he voluntarily reduced his income. Husband concludes the trial court erred when it denied his petition for a reduction in his contractual alimony obligation. We disagree.

¶ 9 Marital settlement agreements are "private undertakings between two parties, each having responded to the 'give and take' of negotiations and bargained consideration." *Brower v. Brower,* 413 Pa.Super. 48, 604 A.2d 726, 731 (1992). A marital support agreement incorporated but not merged into the divorce decree survives the decree and is enforceable at law or equity. *Gaster v. Gaster,* 703 A.2d 513 (Pa.Super.1997). "A settlement agreement between [spouses] is governed by the law of contracts unless the agreement provides otherwise." *Chen, supra* at 360. The terms of a marital settlement agreement cannot be modified by a court in the absence of a specific provision in the agreement providing for judicial modification. *Brower, supra* at 730; 23 Pa.C.S.A. § 3105(c).

¶ 10 Established Pennsylvania law states:

When interpreting the language of a contract, the intention of the parties is a paramount consideration. In determining the intent of the parties to a written agreement, the court looks to what they have clearly expressed, for the law does not assume that the language was chosen carelessly. When interpreting agreements containing clear and unambiguous terms, we need only examine the writing itself to give effect to the parties' intent.

*Melton v. Melton,* 831 A.2d 646, 653–54 (Pa.Super.2003) (internal citations omitted). In other words, the intent of the parties is generally the writing itself. *Kripp, supra* at 1163. In ascertaining the intent of the parties to a contract when unclear from the writing itself, the court considers the parties' outward and objective manifestations of assent, as opposed to their undisclosed and subjective intentions. *Espenshade v. Espenshade,* 729 A.2d 1239, 1243 (Pa.Super.1999). Thus,

[T]he court may take into consideration the surrounding circumstances, the situation of the parties, the objects they apparently have in view, and the nature of the subject-matter of the agreement. The court will adopt an interpretation that is most reasonable and probable bearing in mind the objects which the parties intended to accomplish through the agreement.

*Laudig v. Laudig,* 425 Pa.Super. 228, 624 A.2d 651, 653 (1993). *See also Melton, supra* (stating court may take into account attendant circumstances to determine parties' intent, when parties' intentions are

unclear). "Before a court will interpret a provision in...a contract in such a way as to lead to an absurdity or make the...contract ineffective to accomplish its purpose, it will endeavor to find an interpretation which will effectuate the reasonable result intended." *Laudig, supra* at 654.

¶ 11 Additionally, this "Commonwealth has accepted the principle in Restatement (Second) of Contracts § 205 that '[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.'" *John B. Conomos, Inc. v. Sun Co., Inc. (R & M)*, 831 A.2d 696; 705–6 (Pa.Super.2003), *appeal denied*, 577 Pa. 697, 845 A.2d 818 (2004) (citation omitted). "The duty of 'good faith' has been defined as '[h]onesty in fact in the conduct or transaction concerned.'" *Somers v. Somers*, 418 Pa.Super. 131, 613 A.2d 1211, 1213 (1992) (citation omitted).

> The obligation to act in good faith in the performance of contractual duties varies somewhat with the context, and a complete catalogue of types of bad faith is impossible, but it is possible to recognize certain strains of bad faith which include: evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

*Id.* (internal citations omitted).

¶ 12 A similar requirement has been developed in common law called the "doctrine of necessary implication," which states:

> In the absence of an express provision, the law will imply an agreement by the parties to a contract to do and perform those things that according to reason and justice they should do in order to carry out the purpose for which the contract was made and to refrain from doing anything that would destroy or injure the other party's right to receive the fruits of the contract.

*Palmieri v. Partridge*, 853 A.2d 1076, 1079 (Pa.Super.2004) (citation omitted). "Courts employ the doctrine of necessary implication as a means of avoiding injustice by inferring contract provisions that reflect the parties' silent intent." *Id.* "In the absence of an express term, the doctrine of necessary implication may act to imply a requirement necessitated by reason and justice without which the intent of the parties is frustrated." *Somers, supra* at 1214.

¶ 13 "The duty of good faith and the doctrine of necessary implication apply only in limited circumstances. Implied duties cannot trump the express provisions in the contract." *Conomos, supra* at 706. "Both the implied covenant of good faith and the doctrine of necessary implication are principles for courts to harmonize the reasonable expectations of the parties with the intent of the contractors and the terms in their contract." *Id.* at 707.

¶ 14 The purpose of alimony "is to provide the receiving spouse with sufficient income to obtain the necessities of life." *Wagoner v. Wagoner*, 538 Pa. 265, 270, 648 A.2d 299, 301 (1994). Alimony is generally based upon reasonable needs in accordance with the parties' standard of living established during the marriage, and the payor's ability to pay. *Teodorski v. Teodorski*, 857 A.2d 194 (Pa.Super.2004).

¶ 15 In the instant case, the parties voluntarily entered into the marital settlement agreement, each with the advice of independent counsel. The agreement was incorporated but not merged into the divorce decree. Thus, principles of contract law govern the agreement. *See Chen, supra; Gaster, supra.* Under the express terms of the alimony provision, Husband's alimony payments can be modified only if

his gross income in any one calendar year drops below $200,000.00 or rises above $600,000.00. *See Brower, supra.*

 ¶ 16 Husband petitioned the court for a reduction in his alimony payment, alleging his gross income fell below the threshold level. The trial court made an independent determination after a hearing that Husband's gross yearly income in 2003 exceeded $200,000.00, which did not entitle him to a reduction in the alimony payment. The trial court opinion set forth its analysis as follows:

> [W]e have determined that the Husband has failed to bear his burden of proof to establish that his "income", as that term is used for purposes of interpreting this particular contract, is in fact less than $200,000.00 in this calendar year. The term income as used in the Domestic Relations Code is as follows:
>
> > "Income." Includes compensation for services, including, but not limited to, wages, salaries, bonuses, fees, compensation in kind, commissions and similar items; income derived from business; gains derived from dealings in property; interest; rents; royalties; dividends; annuities; income from life insurance and endowment contracts; all forms of retirement; pensions; income from discharge of indebtedness; distributive share of partnership gross income; income in respect of a decedent; income from an interest in an estate or trust; military retirement benefits; railroad employment retirement benefits; social security benefits; temporary and permanent disability benefits; workers' compensation; unemployment compensation; other entitlements to money or lump sum awards, without regard to source, including lottery winnings; income tax refunds; insurance compensation or settlements; awards or verdicts; and any form of

> payment due to and collectible by an individual regardless of source.
>
> 23 Pa.C.S.A § 4302, Definitions.

The Husband was employed in a very substantial position as Senior Vice-President of Sales in Mamiye Brothers, Inc. a New York clothing manufacturer. He was earning in the range of $350,000.00–$400,000.00 a year when he decided that he would voluntarily resign this position in October 2001. His subordinate at Mamiye Brothers, Inc. ended up as his new wife after he divorced his former wife. The new wife then became his employer in Naples, Florida. Husband's testimony was that his assistant of sorts purchased a real estate concern in Naples, Florida and hired Husband as a sales associate. Husband contends that his gross earnings in 2003 were $84,000.00. However, Husband contends that his monthly living expenses including his alimony and support payments were $17,562.00 per month [or] $210,744.00 per year.

\* \* \* \* \* \*

Husband contends that his association with his new wife's company, known as Quail Communities Realty, Inc., is one of an independent contractor for which the sole income is comprised of sales commissions. A joint 2003 income tax return was offered and received into evidence, which included both business income and Husband's sales commissions. There was no explanation given for the allocation of income for Husband or for that of the new wife. The gross income was $206,806.00 for tax purposes. There was no testimony with respect to any "compensation in kind" "gains derived from dealings and property" nor the litany of other elements of "income" as defined in the Domestic Relations Code. Based on the expenses paid by the Husband, as is documented by his

expense statement, it is reasonable to conclude that there are other forms of income or sources of remuneration which Husband has access to, but were not revealed to the Court. Gross income and not net income is the basis upon which the modification of the alimony was to be made. Husband was obliged to prove that his gross income had fallen below $200,000.00 in the calendar year, and this he failed to do. Tax definitions of income are not controlling with respect to defining income under the Domestic Relations Code. *Darby v. Darby*, 455 Pa.Super. 63, 686 A.2d 1346 [ (Pa.Super.1996), *appeal denied*, 548 Pa. 670, 698 A.2d 594 (1997) ]. (Trial Court Opinion, filed October 21, 2004, at 3–4, 6–7).

¶ 17 Upon careful review of the record, we conclude the trial court properly determined Husband did not meet his threshold burden to prove his gross income dropped below $200,000.00 in the calendar year 2003. *See Chen, supra.* Moreover, we will not second-guess the trial court's judgment on the credibility of Husband's dubious explanations for his reduced income and the discrepancy between his declared income and documented expenses for tax year 2003. *See Wade, supra.* Consequently, we refuse to disturb the court's decision to deny Husband a reduction in his alimony payment under the express terms of his agreement.

■■■ ¶ 18 Moreover, the modification provision of the alimony agreement does not expressly define the sources of income, which the court may utilize to calculate gross income in any given year, other than to exclude distribution of Husband's deferred compensation account or his profit-sharing principal. (*See* Agreed Order at 13). Absent express language, the trial court considered the purpose and attendant circumstances of the agreement to reasonably effectuate what the parties intended to accomplish by including alimony in their settlement agreement. *See Melton, supra; Laudig, supra.* Therefore, the trial court properly looked to relevant Divorce Code provisions for guidance to facilitate the purpose and expectations of the parties' alimony agreement. *See id. See also Wagoner, supra; Teodorski, supra. Compare Chamberlin v. Chamberlin,* 693 A.2d 970 (Pa.Super.1997) (stating trial court could not impute presumptive minimum alimony and assigned earning capacity into settlement agreement which contained clear and unambiguous terms regarding formula for adjusting alimony payment if Husband's salary dropped below threshold level).

■■■ ¶ 19 Further, the parties' contract imposed a duty of good faith to perform contractual obligations diligently and honestly. *See Conomos, supra; Somers, supra.* Husband consented to pay Wife $1200.00 per week in alimony as long as his gross income did not go below $200,000.00. Husband conceded he was not fired from his lucrative employment with Mamiye Brothers. Moreover, Husband presented no evidence of a company-imposed salary reduction to support his claim that his job was in jeopardy, due to lower sales volume and changes in the business environment. Husband should not be allowed to evade the spirit or abuse the terms of the agreement by unilaterally and voluntarily reducing his income. *See id.* To do so would destroy Wife's right to receive the fruits of her bargained-for agreement. *See Palmieri, supra.*

■■■ ¶ 20 Similarly, the doctrine of necessary implication serves to prohibit Husband from voluntarily reducing his income. *See id.* Although the agreement did not expressly state that Husband could seek a reduced alimony payment only upon an involuntary salary reduction, to infer otherwise would give Husband the power to

unilaterally defeat the purpose for which the alimony agreement was made, and to destroy Wife's right to receive the benefit of the support for which she bargained. *Id.* To prevent this injustice, the trial court properly imputed this requirement into the contract. *See id.; Conomos, supra; Somers, supra.*

¶ 21 Based upon the foregoing, we conclude Husband's allegations of diminished financial circumstances did not warrant modification of his alimony obligation under the parties' agreement. Husband is bound by his contract. *See Brower, supra.* Accordingly, we affirm.

¶ 22 Order affirmed.