J-S46026-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| JOHN R. AZALTOVIC, JR., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| AMY E. HEDGES, | |
| Appellant | No. 2090 MDA 2016 |

Appeal from the Order Entered November 23, 2016
In the Court of Common Pleas of Northumberland County
Civil Division at No(s): CV-12-2116

BEFORE:  BOWES, J., OLSON, J., and STEVENS, P.J.E.*

MEMORANDUM BY OLSON, J.:                     **FILED OCTOBER 11, 2017**

Appellant, Amy E. Hedges (hereinafter "Mother" or "Wife"), appeals from the order entered on November 23, 2016.  The subject order granted, in part, the "Petition for Contempt and to Enforce the Marital Settlement Agreement" that was filed by John R. Azaltovic, Jr. (hereinafter "Father" or "Husband"), and ordered Mother to "pay [Father] $910.00 per month for two years pursuant to Paragraphs 15 and 16 of the Marital Separation Agreement."  Trial Court Order, 11/23/16, at 1.  Respectfully, we vacate and remand.

Mother and Father married in 2005 and separated on October 10, 2011.  Two children were born of the marriage:  J.R.A. (born in July 2005) and D.R.A. (born in December 2009) (hereinafter, collectively, "the Children").  Separation Agreement, 11/9/11, at 1.  Mother and Father

---

* Former Justice specially assigned to the Superior Court.

divorced on May 8, 2013, by decree entered in the Court of Common Pleas of Northumberland County, Pennsylvania. Divorce Decree, 5/8/13, at 1.

Prior to their divorce, the parties entered into a Separation Agreement. Under the terms of the Separation Agreement, Mother has primary physical custody, and the parties share legal custody, of the Children. Separation Agreement, 11/9/11, at ¶ 23. Moreover, the following two paragraphs of the Separation Agreement have relevance to this appeal:

> **15. SUPPORT, [ALIMONY PENDENTE LITE (APL)] & ALIMONY.**
>
> Husband and Wife both agree to waive any right they may have to any spousal support, APL or alimony unless Wife files for child support in the future. In said event, Husband shall be entitled to a credit of [$910.00] per month against any child support Wife may receive for a period of two [] years from the date when Wife would file for said child support. In the event the credit would exceed the child support amount, Wife shall not be obligated to pay Husband the difference. This obligation and credit shall only exist in the event Wife files for child support in the future. In the event Husband would file for child support, he shall not be entitled to the above-referenced credit.
>
> **16. CHILD SUPPORT.**
>
> Wife agrees she shall not file for child support against Husband at the present time. If at any time in the future Wife files for child support against Husband he shall be entitled to a spousal support, APL or alimony credit as referenced to in Paragraph 15. The party with primary physical custody shall be able to file for child support at any time.

Separation Agreement, 11/9/11, at ¶¶ 15-16.

Under the terms of both the divorce decree and the Separation Agreement, the Separation Agreement was incorporated, but not merged, into the divorce decree. *Id.* at ¶ 3; Divorce Decree, 5/8/13, at 1.

Following the separation, Mother and the Children relocated to Virginia. As the trial court explained: "[i]n June [] 2016, [Mother] sought and received a child support order in Virginia. This order is dated June 1, 2016 and pursuant thereto, [the Virginia court declared that Mother was entitled to] receive $1,043.00 per month for the support of the couple's two minor children." Trial Court Opinion, 3/21/17, at 2 (some internal capitalization omitted).

On August 1, 2016, Father filed a "Petition for Contempt and Enforcement of Marital Separation Agreement" (hereinafter "Father's Petition to Enforce" or "Father's Petition") in the Court of Common Pleas of Northumberland County. Within Father's Petition, Father claimed that – since Mother sought and received child support from him – he was now entitled to receive $910.00 per month in alimony from her, pursuant to Paragraphs 15 and 16 of the Separation Agreement. Father's Petition to Enforce, 8/1/16, at 4.[1]

_____

[1] Within Father's Petition, Father also claimed that Mother was in contempt for noncompliance with the Separation Agreement, as she filed for child support and yet refused to pay Father the $910.00 per month that, he claimed, he was entitled to receive under the terms of the Separation Agreement. Father's Petition to Enforce, 8/1/16, at 2. Father claimed that, pursuant to the Separation Agreement, Mother was required to reimburse
*(Footnote Continued Next Page)*

Mother opposed Father's Petition and claimed that Paragraphs 15 and 16 of the Separation Agreement violated public policy and were unenforceable. ***See*** Mother's Memorandum in Opposition, 11/9/16, at 2. As Mother argued, Paragraphs 15 and 16 of the Separation Agreement were in contravention of Pennsylvania's public policy because the paragraphs attempted to "bargain away" the Children's right to adequate support and "penalize[ Mother] for pursuing her children's rights." ***Id.*** at 4.

The trial court held a hearing on Father's Petition and, on November 23, 2016, the trial court entered an order, granting Father's Petition in part. As is relevant to the current appeal, the trial court ordered Mother "to pay [Father] $910.00 per month for two years pursuant to Paragraphs 15 and 16 of the [] Separation Agreement." Trial Court Order, 11/23/16, at 1.

Mother filed a timely notice of appeal. She raises one claim to this Court:

> Are [P]aragraphs 15 and 16 of the [] Settlement Agreement against public policy and unenforceable?

Mother's Brief at 4.

*(Footnote Continued)* ————————————

the attorney's fees that he expended to enforce the agreement. ***Id.***; ***see also*** Separation Agreement, 11/9/11, at ¶ 32 ("[i]f either party shall be found in contempt of [the Separation] Agreement, they shall be liable for the attorney's fees of the other party necessary to enforce [the Separation] Agreement"). However, the trial court denied Father's request for attorney's fees and Father did not appeal that determination. Trial Court Order, 11/23/16, at 1.

In the case at bar, the Separation Agreement was incorporated, but not merged, into the divorce decree. Therefore, under Pennsylvania law, the Separation Agreement survived the entry of the divorce decree and is governed by the law of contracts. *Nessa v. Nessa*, 581 A.2d 674, 676 (Pa. Super. 1990) ("separation or property settlement agreements for support remain as contracts to be enforced at law or in equity unless they are merged into a divorce decree or court order. Upon merger, they are superseded as contracts and take on all of the attributes of support orders for purposes of modification and enforcement") (internal quotations and citations omitted) (some internal capitalization omitted).

"On appeal from an order interpreting a marital settlement agreement, we must decide whether the trial court committed an error of law or abused its discretion." *Stamerro v. Stamerro*, 889 A.2d 1251, 1257 (Pa. Super. 2005). Nevertheless:

> [since] contract interpretation is a question of law, this Court is not bound by the trial court's interpretation. Our standard of review over questions of law is *de novo* and to the extent necessary, the scope of our review is plenary as the appellate court may review the entire record in making its decision. However, we are bound by the trial court's credibility determinations.

*Id.* at 1257-1258 (internal quotations, citations, and corrections omitted).

Regarding marital settlement agreements, we have explained that such agreements are "private undertakings between two parties, each having responded to the 'give and take' of negotiations and bargained

- 5 -

consideration." *Id.* at 1258 (internal quotations and citations omitted). Thus, marital settlement agreements are "presumed to be valid and binding upon the parties" and, generally, "[t]he terms of a marital settlement agreement cannot be modified by a court in the absence of a specific provision in the agreement providing for judicial modification." *In re Ratony's Estate*, 277 A.2d 791, 794 (Pa. 1971); *Stamerro*, 889 A.2d at 1258 (internal quotations and citations omitted); 23 Pa.C.S.A. § 3105(c) ("[i]n the absence of a specific provision to the contrary appearing in the agreement, a provision regarding the disposition of existing property rights and interests between the parties, alimony, alimony *pendente lite*, counsel fees or expenses shall not be subject to modification by the court").

However, "a court will not enforce a contract which is unlawful or in violation of public policy." *Westmoreland Intermediate Unit #7 v. Westmoreland Intermediate Unit #7 Classroom Assistants Educ. Support Personnel Ass'n*, 939 A.2d 855, 863 (Pa. 2007). As our Supreme Court has held:

> In assessing whether a contractual agreement violates public policy[, the Supreme] Court is mindful that public policy is more than a vague goal which may be used to circumvent the plain meaning of the contract.
>
> Public policy is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interest. As the term "public policy" is vague, there must be found definite indications in the law of the sovereignty to justify the invalidation of a contract as contrary to that policy. Only dominant public policy would justify such action. In the absence of a plain indication of

> that policy through long governmental practice or statutory enactments, or of violations of obvious ethical or moral standards, the Court should not assume to declare contracts contrary to public policy. The courts must be content to await legislative action. . . .
>
> It is only when a given policy is so obviously for or against the public health, safety, morals or welfare that there is a virtual unanimity of opinion in regard to it, that a court may constitute itself the voice of the community in so declaring that the contract is against public policy.

***Ferguson v. McKiernan***, 940 A.2d 1236, 1245 n.16 (internal quotations, citations, and corrections omitted).

On appeal, Mother claims that Paragraphs 15 and 16 of the Separation Agreement violate our public policy because the paragraphs "bargain[] away" the Children's right to adequate support. We agree.

One parent "cannot, by contract, bargain away the right of [their] minor child to adequate support from the [other parent], regardless of the validity of the agreement as between the parents themselves." ***Miesen v. Frank***, 522 A.2d 85, 87 (Pa. Super. 1987) (internal quotations and citations omitted). Therefore, in ***Miesen***, this Court invalidated – on public policy grounds – an agreement between a mother and a father, whereby the mother agreed to indemnify the father for "any payments of child support [the father was] obligated to pay." ***Id.*** at 88. The ***Miesen*** Court explained:

> To require [the mother] to repay [the father] all the support payments he has made and will make in the future would undermine his legal duty to support his children to the best of his ability. As a result, the indemnification clause would defeat the purpose of child support payments for the welfare of the child; the money [the father] contributed towards his children's support would end up back in his own

pocket. This attempt to shirk his legally mandated duty we cannot allow. . . .

A child has a right to be supported by his or her parents. We cannot permit a parent to indirectly remove that right by a contractual indemnification agreement between himself and his former spouse. Thus, we hold that the indemnification provision contained within the parties' [] separation agreement is void as contrary to Pennsylvania public policy.

*Id.* at 87-88 (internal citations omitted).

Simply stated, *Miesen* controls the case at bar and mandates that we vacate the trial court's order.

As noted, Paragraphs 15 and 16 of the Separation Agreement declare that Mother and Father waive their right to alimony "**unless [Mother] files for child support** in the future." Separation Agreement, 11/9/11, at ¶ 15 (emphasis added). In that event, the agreement declares that Father "shall be **entitled to a credit of [$910.00] per month against any child support Wife may receive** for a period of two [] years from the date when Wife would file for said child support." *Id.* (emphasis added). Thus, the agreement ties Mother's alimony obligation **to her request for child support** and then **automatically offsets** Father's child support payments – and Mother's child support proceeds – by $910.00 per month. In other words, the separation agreement works to indemnify Father for child support

payments, but by another name.[2]  Therefore, as we held in **Miesen**, we hold here:

> [t]o require [Mother] to repay [Father $910.00 per month in] support payments he has made and will make [for two years] in the future would undermine his legal duty to support his children to the best of his ability.  As a result, [Paragraphs 15 and 16 of the Separation Agreement] would defeat the purpose of child support payments for the welfare of the [Children]; the money [Father] contributed towards his children's support would end up back in his own pocket.  This attempt to shirk his legally mandated duty we cannot allow.

**See Miesen**, 522 A.2d at 87-88.

In accordance with **Miesen**, Paragraphs 15 and 16 of the Separation Agreement are void as against Pennsylvania's public policy.  Thus, respectfully, we conclude that the trial court's ruling to the contrary was in error.

_____

[2] Whether termed an "indemnification" for child support payments or an "alimony credit" for child support payments, the practical result is the same. The Virginia court declared that Mother was entitled to receive $1,043.00 per month from Father for the support of the Children.  Trial Court Opinion, 3/21/17, at 2.  If Paragraphs 15 and 16 of the Separation Agreement were valid, they would have the practical effect of reducing the child support amount by $910.00 and rendering it so that the Children would receive a mere $133.00 in support per month from Father – which is far below what the Virginia court held was necessary for the best interests of the Children.

Order vacated. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/11/2017