J-A19001-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| FABIEN FORRESTER-CHARLES | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOANNE FORRESTER-CHARLES | : | No. 3309 EDA 2019 |

Appeal from the Order Entered October 23, 2019
In the Court of Common Pleas of Montgomery County
Civil Division at No(s):  No. 2015-01300

BEFORE:  PANELLA, P.J., McLAUGHLIN, J., and McCAFFERY, J.

MEMORANDUM BY PANELLA, P.J.:               **FILED MARCH 16, 2021**

Appellant, Fabien Forrester-Charles, appeals from the October 23, 2020 order of the Montgomery County Court of Common Pleas, denying his petition to modify spousal support. Although we find there was some confusion in the instant proceedings, we nevertheless find the trial court has not abused its discretion and therefore affirm the order.

The parties were married in 1990. Appellant filed a complaint in divorce on January 22, 2015 and reinstated it on June 25, 2015. On that later date, the parties entered into a marital settlement agreement[1] (MSA) which divided

---

[1] We note that throughout the record this agreement is interchangeably referred to as a "Property Settlement Agreement" and a "Marital Settlement Agreement." For consistency, we will refer to the agreement as a Marital Settlement Agreement throughout this memorandum.

their marital assets and set forth terms for alimony. The MSA dictated that Appellant would pay his wife, Appellee, $2,400 per month in alimony until April 30, 2034. *See* MSA, 6/25/15, at 15. The MSA also states that it shall be deemed an order of the court and enforced as such but precludes modification or waiver of any of its terms unless in writing and signed by both parties. *See id*. at 4, 17, and 21.

Of relevance to the current appeal, the MSA provided for modification of alimony in order to "protect [against] a loss of job or a significant decrease in [Appellant's] base salary". *See id*. at 16. Specifically, the MSA provided that alimony shall be modified upon a decrease in Appellant's income of at least twenty-five percent of his base annual salary. *See id*.

A divorce decree was entered on October 19, 2015. The MSA was incorporated, but not merged, into the decree.

On December 15, 2016, Appellant filed a petition to reduce and modify alimony, alleging he was terminated from his employment and receiving unemployment.

Prior to the hearing scheduled on that petition in front of the trial court, a hearing was held in front of a support master on a separate petition filed by Appellant to modify child support.[2]

---

[2] The petition to modify child support does not appear in the certified record, however Appellant asserts it was filed on June 16, 2016 in his brief. *See* Appellant's Brief, at 4.

As a result of the master's hearing, an agreed order was entered on January 19, 2017. The agreed order purported to address all issues, including alimony. However, the order only modified Appellant's child support payments, and stated that the parties had agreed "for purposes of this Agreement, alimony is not modified." Agreed Order, 1/19/17. Therefore, the original $2,400 alimony amount was simply carried over to calculate Appellant's full support amount.

The agreed order further stated that the agreement was based on Appellant's earning capacity of $100,000 and Appellee's earning capacity of $25,000. Due to the entry of this agreement, the hearing scheduled before the trial court on Appellant's petition to modify alimony was cancelled.

On May 26, 2017, Appellant filed a petition for special relief to reduce and modify alimony. On October 16, 2017, the petition was dismissed after Appellant failed to appear for a hearing scheduled on the matter. Appellant filed a motion for reconsideration which was denied.

In July 2019, Appellant filed a petition for modification of child support and a separate petition titled "Petition to Modify Spousal Support Order" on the basis that his change in employment and earning capacity entitled him to modification of his support payments.[3] Appellant filed these documents *pro*

_____

[3] Appellant and his counsel have stated on the record that separate petitions were filed at the specific instruction of the court. **See** N.T., 10/8/19, at 5 ("My client filed pro se, and he had to file two petitions; one with the master and

*se*, and it is likely that his use of the term "spousal support" in the title of the second petition contributed to the confused proceeding that ensued.

On August 27, 2019, a master's hearing was held on the petition to modify child support. While hearing from the parties on that petition, the master specifically stated, "You understand that I can't touch the alimony portion of this order." N.T., Master's Hearing, 9/27/19, at 7 (re-paginated for clarity). On September 3, 2019, the master found that Appellant's earning capacity was $2,837.40 per month and Appellee's earning capacity was $2,843.89 per month. *See* Master's Findings of Fact, 9/3/19, at 1. The master once again simply carried over the original alimony amount of $2,400 to provide a total support amount. *See id*. at 2.

On September 16, 2019, after a short list conference, the trial court entered an order scheduling a protracted hearing on the "Petition to Modify Spousal Support Order" on October 8, 2019. The parties were further ordered to mutually exchange financial discovery including income, bank accounts, asset and liability information, and proof of employment of either party one week prior to the hearing.

At the hearing, the trial court admitted to its confusion regarding the procedural posture of the hearing. *See* N.T., 10/8/19, at 7-8. The court did

---

one with the court, in two different places."); *Id*. at 10 ("My client is saying he was told at court administration, and in front of the Master that child support and alimony were two different petitions to be filed separately, and considered separately").

not have the benefit of the transcript from the child support hearing before the master. *See id*. at 8. Under these circumstances, the court viewed the master's report as an adjudication on the issue of reduction of alimony, since the master's report included alimony in its calculations. *See id*. at 10.

After the hearing, the court took the matter under advisement. On October 23, 2019, the trial court denied the "Petition to Modify Spousal Support Order." In denying the petition, the trial court noted that the parties failed to comply with Montgomery County Local Rule of Civil Procedure 1910.10 and Pa.R.C.P. 1910.12. This timely appeal followed.

Appellant raises four interrelated issues on appeal:

1. Did the Trial Court commit reversible error by not honoring the parties' Marital Settlement Agreement that requires a reduction in Alimony if Husband's income decreases in excess of 25%?

2. Did the Trial Court err by finding the parties agreed "Alimony was not to be modified?"

3. Did the Trial Court abuse its discretion and err in finding Husband voluntarily reduced his income in an attempt to circumvent his obligation to make monthly alimony payments to Wife?

4. Did the Trial Court err finding Husband's Petition to Modify Alimony was procedurally flawed under Pa.R.C.P. 1910.12, and Montgomery County Local Rule of Civil Procedure 1910.10.

Appellant's Brief, at 3 (supplied answers omitted). He requests that this court reverse the order denying modification and remand to the trial court for an evidentiary hearing to determine an appropriate alimony award.

Preliminarily, the trial court argues that we should dismiss Appellant's appeal and affirm the October 23, 2019 order as the court believes Appellant failed to conform to the rules of local and state civil procedure. Specifically, the trial court argues that Appellant voluntarily entered into the January 19, 2017 agreed support order and failed to file exceptions to or otherwise appeal from that order. The trial court therefore found that Appellant and his counsel "blatantly disregarded" Pa.R.C.P. 1910.12 and Montgomery County Local Rule of Civil Procedure 1910.10, and instead "improperly file[d] his July 8, 2019 Petition to Modify Spousal Support Order".

Here we harvest the fruit of Appellant's *pro se* petition. The trial court was focused on the law of spousal support, given the petition's title, while what Appellant was truly challenging was an alimony award. The trial court's logic makes sense if we construe the petition as a challenge to a spousal support award. However, spousal support could not have been at issue, as a divorce decree had previously been entered.[4] Appellant's petition should have

---

[4] The distinctions between spousal support, alimony *pendente lite*, and alimony are based on the progress of divorce proceedings. Spousal support is based upon the existence of the marriage, and can be instituted before divorce proceedings have been initiated. Spousal support is terminated when a divorce decree is entered. ***See Horn v. Horn***, 564 A.2d 995, 996 (Pa. Super. 1989). Alimony *pendente lite* is based on the existence of ongoing litigation. It terminates when a divorce decree has been entered and all economic issues of the divorce have been settled. ***See id***. Alimony is based upon economic justice between ex-spouses after the divorce decree has been entered. It continues beyond the divorce decree even in the absence of ongoing litigation. ***See McNulty v. McNulty***, 500 A.2d 876, 880 (Pa. Super. 1989).

been regarded as a prayer for modification of alimony rather than an attempt to modify spousal support or the master's order pursuant to Pa.R.C.P. 1910.12.

While we recognize the trial court's confusion, we cannot elevate form over any consideration of the substance of Appellant's petition and Appellee's answer. Further, we cannot agree with any suggestion that Appellant is now barred from ever modifying alimony due to the January 19, 2017 order.

Consequently, after review of the trial court's opinion and the testimony from the October 8, 2019 hearing, it seems that the trial court has misapplied the rules. Pa.R.C.P. 1910.12, cited by the trial court, governs the procedure of officer conferences and hearings for support matters. However, the explanatory comment to Pa.R.C.P. 1910.1, which lays out the scope of this chapter of rules, clarifies that alimony *pendente lite* must be distinguished from permanent alimony for purposes of the rule, and that the rule only applies to alimony *pendente lite*.

In contrast, alimony is governed by 23 Pa.C.S.A. § 3702 and Pa.R.C.P. 1920.1 et seq. Further, agreements for alimony approved by the court in connection with actions for divorce under Section 3701 of the Divorce Code are deemed to be court orders enforceable under Section 3703 of the Code. *See* 23 Pa.C.S.A. § 3701(f).

However, where the parties agreed to an alimony amount through an MSA and the MSA did not merge with the divorce decree, the ability to modify

alimony must flow from the terms of the MSA and the intent of the parties in negotiating the contract, not from the general provisions of the Divorce Code. *See Stamerro v. Stamerro*, 889 A.2d 1251, 1258 (Pa. Super. 2005). Husband and Wife acknowledged this in the MSA, which states that they may have different rights or obligations under the Divorce Code than those negotiated in the MSA. *See* MSA, at 3-4.

Initially, we must address the trial court's contention that since Appellant did not enter the MSA as an exhibit at the hearing, any claim he has related to the MSA is waived. We disagree. Appellant attached the MSA, as part of the January 19, 2017 agreed order, to his petition. Appellee admitted that Appellant's attachment was the January 19, 2017 order of court. Accordingly, there was no material dispute as to the terms of the MSA; the only factual issues in dispute at the hearing concerned whether Appellant had actually suffered a reduction of income greater than twenty-five percent.

We therefore turn to Appellant's arguments that the trial court misapplied the MSA. Because Appellant's alimony obligation arose from the MSA, our review is governed by the following principles:

> Marital settlement agreements are private undertakings between two parties, each having responded to the 'give and take' of negotiations and bargained considerations. A marital support agreement incorporated but not merged into the divorce decree survives the decree and is enforceable at law or equity. A settlement agreement between spouses is governed by the law of contracts unless the agreement provides otherwise. The terms of a marital settlement agreement cannot be modified by a court in the absence of a specific provision in the agreement providing for judicial modification.

***Stamerro***, 889 A.2d at 1258 (citations and quotation marks omitted).

"The paramount goal of contract interpretation is to ascertain and give effect to the parties' intent. To accomplish this goal, each and every part of the contract must be taken into consideration and given effect, if possible, and the intention of the parties must be ascertained from the entire instrument." ***Tuthill v. Tuthill***, 763 A.2d 417, 419 (Pa. Super. 2000) (*en banc*) (citation omitted). To ascertain the intent of the parties, the court first looks to the plain language of the contract. **See *Stamerro*,** 889 A.2d at 1258 (citation omitted). If the language of the contract is clear and unambiguous, we need not consider extrinsic evidence of the parties' intent. ***Id***. (citation omitted). Therefore, we do not look to individual provisions of a contract in a vacuum to interpret the agreement, but rather take into consideration all elements of the contract that represent the full sum of the parties' bargained-for exchange. **See *Tuthill***, 763 A.2d at 419. "Absent fraud, misrepresentation, or duress, spouses should be bound by the terms of their agreements." ***Rosiecki v. Rosiecki***, 231 A.3d 928, 933 (Pa. Super. 2020) (citation omitted).

Here, the parties voluntarily entered into the MSA. The record before us does not reveal any allegation of fraud or misrepresentation. The agreement was incorporated but not merged into the divorce decree. Thus, principles of contract law govern the agreement. Under the express terms of the alimony provision, Appellant's alimony payments can be modified if his annual base

salary decreases by more than twenty-five percent. ***See*** MSA, at 16. Appellant petitioned the court for a reduction in his alimony payment, alleging such a decrease in his salary warranted a modification.

The trial court found that Appellant's reduction in income was voluntary, and therefore Appellant did not qualify for a reduction in alimony.

We note, the MSA does not on its face condition Appellant's right to a reduction in alimony on whether the reduction in his income is voluntary[5]. ***See*** MSA, 6/25/15, at 16. Rather, the limits on his right to a reduction are simply that: 1) his reduction in annual income must "be in excess of twenty-five percent," and (2) bonus income is not included in the calculation. ***See id***.

---

[5] Though the trial court provides no citation for its analysis, it appears the idea of voluntariness may come from an agreed order entered into by the parties on July 22, 2015. Agreed Order for Support, 7/22/15, at 1. However, it is important to note that the July 22, 2015 order was entered prior to the October divorce decree and specifically requires that the order be read in conjunction with the MSA. Further, the divorce decree incorporates the MSA, not the July 22, 2015 order. Finally, the circumstances surrounding the July 22, 2015 order are not evident from the record. There is no indication what process led to its creation or who drafted it.

Alimony may be awarded by the court only in conjunction with the entry of a decree of divorce. ***See*** 23 Pa.C.S.A. § 3107(a). All unvested marital property rights are terminated by the entree of the decree unless the decree expressly provides otherwise. ***See*** 23 Pa.C.S.A. § 3503. As such, the July 22, 2015 agreed order, as a disposition of unvested marital property rights, did not survive the entry of the divorce decree. In contrast, the MSA is expressly incorporated (though not merged) into the divorce decree. It therefore controls the disposition of unvested marital property rights after the entry of the decree. If the parties had intended for the July 22, 2015 order to act as an amendment or modification of the MSA, they were required to have the decree expressly note that modification.

- 10 -

Ordinarily, where alimony is granted through an MSA and not through litigation pursuant to the Divorce Code, a trial court is not empowered to modify the terms of the agreement. 23 Pa.C.S.A. § 3105. However, we are mindful of the following:

> [T]his Commonwealth has accepted the principle in Restatement (Second) of Contracts § 205 that [e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement. The duty of good faith has been defined as [h]onesty in fact in the conduct or transaction concerned.
>
> > The obligation to act in good faith in the performance of contractual duties varies somewhat with the context, and a complete catalogue of types of bad faith is impossible, but it is possible to recognize certain strains of bad faith which include: evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

*Stamerro*, 889 A.2d at 1259 (citations and internal quotation marks omitted). Similarly, the common law "doctrine of necessary implication" states "[i]n the absence of an express provision, the law will imply an agreement by the parties to a contract to do and perform those things that according to reason and justice they should do in order to carry out the purpose for which the contract was made and to refrain from doing anything that would destroy or injure the other party's right to receive the fruits of the contract." *See id*.

The modification provision of the alimony agreement does not expressly condition modification of alimony on the voluntariness of the decrease in Appellant's income. However, the parties' contract imposed a duty of good faith to perform contractual obligations diligently and honestly. *See id*. at

- 11 -

1261. Further, the doctrine of necessary implication serves to prohibit Appellant from voluntarily reducing his salary.

Appellant consented to pay Appellee $2,400.00 per month in alimony until 2034 as long as his base salary did not decrease by at least twenty-five percent. The trial court did not find Appellant's reasons for his decrease in salary credible. A party to an MSA should not be allowed to evade the spirit or abuse the terms of the agreement by unilaterally and voluntarily reducing their income, as to do so would destroy the other party's right to receive the fruits of the bargained-for agreement. *See id*. Although the agreement did not expressly state that Appellant could seek a reduced alimony payment only upon an involuntary salary reduction, to infer otherwise would give Appellant the power to unilaterally defeat the purpose for which the alimony agreement was made, and to destroy Appellee's right to receive the benefit of the support for which she bargained. *See id.* To prevent this injustice, the trial court properly imputed this requirement into the contract.

Based upon the foregoing, we conclude the trial court did not abuse its discretion in finding Appellant's allegations of diminished financial circumstances did not warrant modification of his alimony obligation under the parties' MSA. We will not disturb the trial court's judgment on the credibility of Appellant's explanations for his reduced income. Accordingly, we affirm.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/16/2021