J-S16020-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ELENA CHEBOTAREVA A/K/A ELENA YADCHUK | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ULADZIMIR CHARAPUKHA | : | |
| | : | No. 1838 EDA 2020 |
| Appellant | : | |

Appeal from the Order Entered August 27, 2020
In the Court of Common Pleas of Bucks County Domestic Relations at
No(s):  No. 2015DR00718

BEFORE:   BENDER, P.J.E., McLAUGHLIN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY McLAUGHLIN, J.:         **FILED SEPTEMBER 24, 2021**

Uladzimir Charapukha appeals from the order entered in the Domestic Relations court that required him to pay the dental bills and appearance fee for the dental witness of Elena Chebotareva, a/k/a Elena Yadchuk. On appeal, Charapuka argues that the court did not have jurisdiction and erred and abused its discretion by granting Chebotareva's pre-divorce motion for dental fees after the parties had entered into a marital settlement agreement ("MSA") and divorce decree, and where no support order had been entered on the record. Because the court did not have jurisdiction to enter the support order, we vacate the order of August 27, 2020.

Chebotareva sought reimbursement during a contempt hearing for Charapukha's portion of dental bills.

_____

[*] Former Justice specially assigned to the Superior Court.

At a [support] hearing held on December 19, 2017, Wife Elena Chebotareva filed for reimbursement for a dental bill against her Husband Uladzimir Charapukha. She requested reimbursement of $7,000.00, which was his 70% share of her $10,000.00 dental bill. She produced receipts for cash. There was no authentication. [A]t the time of this hearing, [Chebotareva] cleaned houses. [Charapukha] worked at Granite Graphics putting graphic designs on memorials. Both [Chebotareva] and [Charapukha] required a Russian interpreter.

Trial Ct. Op., filed 11/25/20, at 1 (internal citations to the record omitted).

The court denied the request, without prejudice, stating that if the dentist testified at a future hearing, Chebotareva could also seek the dentist's fee for doing so:

[Chebotareva]'s request for reimbursement of dental expenses is denied without prejudice to [Chebotareva]'s right to bring the dentist to a future hearing with detailed records regarding the work that was done to [Chebotareva]. If [Chebotareva] wishes to pursue the matter further, the detailed dental records are to be sent to defendant's counsel ahead of time. If a hearing is held in the future, a request for the repayment of the dentist's witness fee may be made. The case balance may be sought at Equitable Distribution if it is deemed assets are available to make payment. Upon termination of the charging APL order at the end of this year, the monthly arrears payment is modified to the sum of $920.00/month ($211.73 week) effective 1/1/18. A Russian interpret[e]r was used for today's contempt hearing.

**See** Order of Court for Civil Contempt, 12/19/17, at 1.

The parties then appeared before a master on July 18, 2018, for equitable distribution and for the entry of an MSA. N.T., 7/18/18, at 1-4. Chebotareva did not present evidence regarding the dental bills. The language of the settlement provided that it resolved the outstanding economic issues between the parties; Chebotareva was given an additional $2,500.00 pursuant to the agreement. **See id.** at 4-5. The court entered a divorce decree the

following day, which incorporated but did not merge the MSA. ***See*** Decree,

7/19/18, at 1.

Chebotareva then renewed her request for the fees.

On March 19, 2020, [Chebotareva] motioned for a hearing on her $7,000.00 claim and her payment of $1,500.00, as a court appearance fee charged by the dentist. . . . [Charapukha's] lawyer objected at the hearing. He asserted that the [MSA] was a bar to any payment. [The court] went forward with the hearing since [it] considered the August 27, 2020 hearing a continuation of the earlier hearing. The dentist testified to the work done to [Chebotareva's] teeth [and the court found the testimony credible].

Trial Ct. Op. at 1-2.[1]

The court granted the request. Charapukha timely appealed, and raises

the following issues:

1. Did the trial court err when it exercised jurisdiction over [Chebotareva's] pre-divorce motion after the [MSA] was reached and a divorce decree was granted?

2. Did the trial court abuse its discretion when it allowed to hear [Chebotareva's] motion without first setting aside or striking the parties' divorce decree and their [MSA]?

3. Did the trial court err when it considered to hear [Chebotareva's] motion for medical bills after the parties, having waived all of their rights, entered into [an MSA] and a divorce decree was entered?

4. Did the trial court err in considering and hearing [Chebotareva's] pre-divorce motion of December 19, 2017, in view of the fact that it was filed out of time because on July 19,

---

[1] In the motion, Chebotareva's counsel averred that on October 1, 2019, she mailed Charapukha's counsel a copy of the detailed dental records and received no response. ***See*** Motion for Hearing, 3/19/20, at 1-2.

2018, the parties had entered into [an MSA] and an Order granting a divorce decree was issued?

5. Did the trial court err in ordering [Charapukha] to reimburse [Chebotareva] for her dental expenses after the order granting of a divorce decree and the [MSA] was issued, thereby ignoring the provisions of the [MSA]?

6. Was it proper for the trial court to order the reimbursement of dental fees, provided there was no support order on the record to be modified and the parties concluded the divorce with solely a [MSA] agreement and a divorce decree?

Charapukha's Br. at 5-7.

Each of Charapukha's issues are essentially restatements of a single issue: that the trial court erred in granting Chebotareva's request for dental fees because it lacked jurisdiction to do so following the entry of a divorce decree and MSA. Charapukha contends that the property settlement disposed of all outstanding claims and debts and, accordingly, Chebotareva was no longer entitled to reimbursement.The trial court explained its reasons for considering the motion:

> [The court considerers] this Statement as variations on the theme that the MSA precluded [Chebotareva] from proceeding with her claim. The MSA contained the standard boilerplate clause which stated the MSA settled all claims. There was no mention of the dental bill. [The court] viewed the dental claim hearing on August 27, 2020, as a continuation of the December 19, 2017, hearing, especially in light of the lack of referral to the dental bill in the MSA. [The court] therefore viewed this one case as an exception to the general view that this clause resolved all claims. Also, it was inequitable to permit [Charapukha] to object at the first hearing, then refuse to pay when [Chebotareva] bought in the dentist.

Trial Ct. Op. at 3 (internal citations to the record omitted).

"When interpreting a marital settlement agreement, the trial court is the sole determiner of facts and absent an abuse of discretion, we will not usurp the trial court's fact-finding function." ***Stamerro v. Stamerro***, 889 A.2d 1251, 1257 (Pa.Super. 2005) (quotation marks and citation omitted). We are thus bound by the court's credibility determinations. ***See id.*** at 1257-58. Marital settlement agreements are subject to contract principles, and to the extent the issues present questions of law, our standard of review is de novo, and our scope of review is plenary. ***See id.*** at 1257; ***see also Kraisinger v. Kraisinger***, 928 A.2d 333, 339 (Pa.Super. 2007).

The Domestic Relations Code provides that, with regard to divorce decrees,

> **(b) Contents of decree.--**A decree granting a divorce or an annulment shall include, after a full hearing, where these matters are raised in any pleadings, an order determining and disposing of existing property rights and interests between the parties, custody, partial custody and visitation rights, child support, alimony, reasonable attorney fees, costs and expenses and any other related matters, including the enforcement of agreements voluntarily entered into between the parties. In the enforcement of the rights of any party to any of these matters, the court shall have all necessary powers, including, but not limited to, the power of contempt and the power to attach wages.

23 Pa.C.S.A. § 3323(b).

The Pennsylvania Rule of Civil Procedure 1920.31 provides, in relevant part:

> (c) The failure to claim spousal support, alimony, alimony pendente lite, counsel fees, and costs and expenses prior to the entry of a final decree of divorce or annulment shall be deemed a

waiver of those claims, unless the court expressly provides otherwise in its decree. The failure to claim child support before the entry of a final decree of divorce or annulment shall not bar a separate and subsequent action.

(d) Upon entry of a decree in divorce, an existing order for spousal support shall be deemed an order for alimony pendente lite if any economic claims remain pending.

Pa.R.C.P. 1920.31(c)-(d). Pa.R.C.P. 1920.76 provides the suggested form for a divorce decree. The form order includes a statement that "[a]ny existing spousal support order shall hereafter be deemed an order for alimony pendente lite if any economic claims remain pending."

Further, the Domestic Relations Code limits the trial court's power to entertain a motion to open a divorce decree to the period set forth in 42 Pa.C.S.A. § 5505, which generally is 30 days. The code provides:

A motion to open a decree of divorce or annulment may be made only within the period limited by 42 Pa.C.S. § 5505 (relating to modification of orders) and not thereafter. The motion may lie where it is alleged that the decree was procured by intrinsic fraud or that there is new evidence relating to the cause of action which will sustain the attack upon its validity. A motion to vacate a decree or strike a judgment alleged to be void because of extrinsic fraud, lack of jurisdiction over the subject matter or a fatal defect apparent upon the face of the record must be made within five years after entry of the final decree. Intrinsic fraud relates to a matter adjudicated by the judgment, including perjury and false testimony, whereas extrinsic fraud relates to matters collateral to the judgment which have the consequence of precluding a fair hearing or presentation of one side of the case.

23 Pa.C.S.A. § 3332.

Charapukha argues that, pursuant to statute, a divorce decree is a final adjudication of all claims of support that were not raised or resolved prior to

the decree being issued. Charapuka's Br. at 14-15. He relies upon *Justice v. Justice*, 612 A.2d 1354 (Pa.Super. 1992), to argue that the trial court cannot consider economic claims arising from the marriage where no petition to reconsider or modify the decree was timely filed or considered. *See id.* at 584-85. In *Justice*, this Court concluded that once "the divorce decree became final, appellant lost her right to raise any economic claims arising from the marriage" and that, because no motion for reconsideration had been filed, the trial court lost jurisdiction after thirty days following the entry of the divorce decree. *Id.* at 585-89. Additionally, Charapukha argues that because the MSA was not merged within the divorce degree, it survives as an enforceable contract. Charapuka's Br. at 18. Thus, because there is no provision for ongoing support in the contract, any interest was extinguished upon entry of the MSA and divorce decree. *See id.* at 19.

In response, Chebotareva argues that her request for reimbursement was an ancillary claim for support entered pursuant to Pa.R.C.P. 1920.31 which was still pending prior to the entry of the divorce decree. Chebotareva's Br. at 1-6. She avers that under the Pennsylvania Divorce Decree Statute, the trial court retains jurisdiction of any claims raised by parties to the action for which a final order has not yet been entered. *See id.*, citing Pa.R.C.P. 1920.76. In support of her argument, Chebotareva cites *Taylor v. Taylor*, 503 A.2d 439, 442 (Pa.Super. 1986). She contends that this Court has already held that pending ancillary economic rights are vested following a divorce decree, and that the entry of a divorce decree does not alter the right of a

former spouse to an alimony pendente lite or to a support order. Chebotareva also relies on *Jackson v. Jackson*, 166 A.3d 329 (Pa.Super. 2017), to argue that a party does not have to open or vacate a divorce decree so long as the claim is timely raised and preserved. Chebotareva's Br. at 4.

Additionally, Chebotareva avers that, even if the divorce decree must be vacated, she has five years to file a motion to vacate the decree because the pending economic claim was not finalized before the decree was entered. *See id.* at 2. Finally, Chebotareva rejects Charapukha's contract argument, contending that the PSA made no mention of any offer, acceptance, or consideration for her to drop her economic claims. *See id.*

The cases upon which Chebotareva relies are inapposite. *Taylor* concerned economic claims following a bifurcation petition. *Taylor*, 503 A.2d at 441; *see also Wolk v. Wolk*, 464 A.2d 1359, 1361 (Pa.Super. 1983) (noting that "[b]ifurcation separates the termination of the marriage from the distribution of property so that the marriage and each party's personal life are not held hostage to economic demands"). Similarly, *Jackson* involved the entry of a bifurcated divorce decree where the economic claims had not been resolved. *Jackson*, 166 A.3d at 331. In the instant case, no bifurcation petition was filed, and the divorce decree was not bifurcated.

Rather, the record reveals that Chebotareva's claim for dental expenses was denied without prejudice on December 19, 2017. Chebotareva did not file an additional claim or motion until her request for a hearing in March 2020, one year and eight months after the entry of the divorce decree. Although

there was an existing order for Charapukha's support arrearages, the dental bills were not incorporated in that order. As of the time that the equitable distribution and MSA was heard before the master, there was no active motion for dental bill reimbursement. The MSA, which represented that it was the final settlement of economic claims between the parties, did not mention the dental bills. Thus, because there was no active order for the dental bills at the time and the MSA did not mention the dental bills, it cannot be said that this economic claim was "pending" per Pa.R.C.P. 1920.31.

Thus, because there was no pending economic claim and no petition to reconsider or modify the decree was timely filed or considered prior to the entry of the divorce decree, the court did not have jurisdiction to consider the claim. **Justice**, 612 A.2d at 1357. As in **Justice**, once "the divorce decree became final, appellant lost her right to raise any economic claims arising from the marriage" where no motion for reconsideration had been filed. **Id.** Accordingly, we vacate the order.

Order vacated.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/24/2021