J-A01014-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| SUSYN L. TILLERY | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| MICHAEL KELLY TILLERY | : | |
| | : | |
| Appellant | : | No. 2029 EDA 2017 |

Appeal from the Order Dated June 22, 2017
In the Court of Common Pleas of Montgomery County Civil Division at
No(s):  2011-22009

BEFORE:   LAZARUS, J., OTT, J., and PLATT*, J.

MEMORANDUM BY LAZARUS, J.:                 **FILED AUGUST 31, 2018**

Michael Kelly Tillery (Husband) appeals, *pro se*,[1] from the order, entered

in the Court of Common Pleas of Montgomery County, denying his petition to

---

[1] We note with disapproval the condescending, at times sarcastic tone that permeates Husband's *pro se* brief.  In particular, Husband's use of quotation marks when referring to his ex-wife, who continues to use her married surname to Husband's apparent dismay, is inappropriate and gratuitously demeaning.  While divorces can be acrimonious and painful, it is highly inappropriate for a litigant, especially one who himself is a member of the bar, to use this or any Court as a forum to vent his anger and disdain for the trial court and his former spouse.

We further note Husband's failure to comply with the Rules of Appellate Procedure.  Specifically, the argument section of Husband's brief fails to correspond in any meaningful way to either the issues raised in his Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, or those set forth in his statement of questions involved.  The Rules of Appellate Procedure require that "[t]he statement of questions involved must state concisely the issues to be resolved" and that "[n]o question will be considered unless it is stated in the statement of questions involved or fairly suggested thereby." Pa.R.A.P. 2116(a).  In addition, the rules require that "[t]he argument shall

---

\*   Retired Senior Judge assigned to the Superior Court.

modify alimony and denying his exceptions to the report of the support master. Upon careful review, we affirm.

The trial court set forth the relevant factual and procedural history of this matter as follows:

> Susyn L. Tillery ("Wife") and [Husband] were married on May 28, 1993. On January 8, 2015, the Honorable Gail Weilheimer entered a [d]ivorce [d]ecree incorporating the parties' Property Settlement Agreement (PSA), dated May 8, 2014. The parties' PSA includes alimony and child support provisions.
>
> The alimony provision of the PSA provided for payment of alimony by Husband to Wife pursuant to a schedule of payments through December 31, 2018. Husband's alimony payments to Wife were []not subject to modification by either party or any court, except only "(a) in the event of Husband's disability or reduction in Husband's income, for any reason, by 10% or more[.]" PSA, Section VII, Paragraph D4. If Husband became either disabled or his income was reduced by 10% or more, the parties were to "attempt to renegotiate the amount, if any, of Husband's then remaining obligation for payment of Alimony, if any, to Wife." *Id.* If agreement cannot be reached "within thirty (30) days, Alimony will be reduced proportionately to Husband's income reduction (due to disability or otherwise) until and unless otherwise directed by the Court." *Id.*
>
> The child support provision of the PSA required Husband to pay Wife the sum of $3,270.00 per month in child support for the parties' minor child Katherine Tillery until June 30, 2018. The child

---

be divided into as many parts as there are questions to be argued; and shall have at the head of each part . . . the particular point to be treated therein[.]" Pa.R.A.P. 2119(a). Issues not included in the concise statement are deemed waived. Pa.R.A.P. 1925(b)(4)(vii). Here, Husband's Rule 1925(b) statement and statement of questions involved raise two issues, while his argument section is comprised of nearly 20 individual assignments of error, set forth in an arbitrary and disorganized manner. Nevertheless, because we are able to discern the crux of Husband's argument, we decline to find waiver.

support provision allowed either party to seek modification upon a showing of changed circumstances.

On January 17, 2017, Husband filed an [e]mergency [p]etition to [m]odify [a]limony. In his [p]etition, Husband sought to reduce his alimony obligation to $5,131.00 per month going forward. He further sought a refund of the difference paid in 2017 to date plus 6% statutory interest. Finally, Husband sought an award of attorneys' fees and cost[s.]

In his [p]etition, Husband averred, *inter alia*, that he earned 18.5% less than $740,000.00 (Husband's budgeted/projected income), or $603,000.00 in 2016. As a result, Husband sought to modify and reduce his alimony obligation under the PSA to $5,131.00 per month. Per the PSA, Husband was required to pay $6,500.00 per month from January 1, 2017 until December 31, 2018. Husband further averred in his petition that there were no factual or legal disputes to the alleged reduction in income.

On May 8, 2018, Husband filed [s]upport [e]xceptions averring that the Support Master erred in calculating his income as it relates to child support and by failing to address his claim for pre-judgment interest on the $3,270.00 April 2016 [c]hild [s]upport [o]verpayment.

This [c]ourt consolidated Husband's [p]etition to [m]odify [a]limony and his [s]upport [e]xceptions and scheduled a trial . . . on June 19, 2017. Husband offered minimal direct testimony regarding his [p]etition to [m]odify [a]limony at trial. Rather, Husband incorporated his [p]etition to [m]odify [a]limony and its exhibits into the record to serve as his direct testimony. Husband was subjected to cross-examination by Wife's counsel on his [petition]. Husband proffered no other witnesses to testify regarding his [petition]. As it relates to Husband's [s]upport [e]xceptions, both parties made arguments and rested on their findings.

On June 21, 2017, following the trial, the [court] entered an [o]rder denying Husband's [p]etition to [m]odify [a]limony and his [s]upport [e]xceptions. On June 27, 2017, Husband filed a timely [n]otice of [a]ppeal. On July 11, 2017, the [court] ordered Husband to file a [c]oncise [s]tatement of [e]rrors [c]omplained of on [a]ppeal pursuant to Pa.R.A.P. 1925(b). On July 27, 2017, Husband filed his [Pa.R.A.P. 1925(b) statement].

Trial Court Opinion, 8/29/17, at 1-4 (some parentheses omitted).

Husband raises the following issues for our review:

1. Did the [t]rial [c]ourt err in denying [Husband's] [p]etition to [m]odify [a]limony, in particular, in refusing to enforce a contractual provision of the [p]arties' 2014 Property Settlement Agreement which provides for proportionate reduction in [a]limony upon reduction of [Husband's] income, where the [p]arties agreed that there was a valid contract and the only evidence of [Husband's] 2016 income, documentary and testimonial, was uncontroverted that it was substantially more than 10% below his 2014 income as agreed by the [p]arties?

2. Did the [t]rial [c]ourt err in denying [Husband's] [s]upport [e]xceptions and ordering that the [m]aster's [o]rder of April 17, 2017 remain in full force and effect, in particular, refusing to recognize significant reduction in [Husband's] [i]ncome for recalculation of [Wife's] [c]hild [s]upport obligation?

Brief of Appellant, at 4 (emphasis in original).

We begin by noting that this case requires this Court to interpret a PSA which was incorporated, but not merged, into the parties' divorce decree. The following legal principles are applicable in the review of a marriage settlement agreement.

"A marital support agreement incorporated but not merged into the divorce decree survives the decree and is enforceable at law or equity. A settlement agreement between spouses is governed by the law of contracts unless the agreement provides otherwise." *Stamerro v. Stamerro*, 889 A.2d 1251, 1258 (Pa. Super. 2005) (citations and quotations omitted).

In conducting our review of the court's holding as to the marriage settlement agreement, we remain cognizant of the following:

Because contract interpretation is a question of law, this Court is not bound by the trial court's interpretation. Our standard of review over questions of law is *de novo* and to the extent necessary, the scope of our review is plenary as

- 4 -

the appellate court may review the entire record in making its decision. However, we are bound by the trial court's credibility determinations.

*Id.* at 1257–1258 (citations and quotations omitted).

When interpreting a marital settlement agreement, the trial court is the sole determiner of facts and absent an abuse of discretion, we will not usurp the trial court's fact-finding function. On appeal from an order interpreting a marital settlement agreement, we must decide whether the trial court committed an error of law or abused its discretion.

*Id.* at 1257 (citations and quotations omitted).

*Kraisinger v. Kraisinger*, 928 A.2d 333, 339 (Pa. Super. 2007).

Here, the parties' PSA provides, in relevant part, as follows:

VII.  PROVISIONS FOR WIFE

  A.  Husband shall pay to Wife as and for her allowance for support and maintenance by way of Alimony (hereinafter referred to as "Alimony"), as follows:

    1.  The sum of $8,692 a month effective June 1, 2014 through and including December 31, 2014;

    2.  The sum of $8,000 a month effective January 1, 2015 through and including December 31, 2015;

    3.  The sum of $7,000 a month effective January 1, 2016 through and including December 31, 2016;

    4.  The sum of $6,500 a month effective January 1, 2017 through and including December 31, 2018.

. . .

  D.  . . .

    4.  Alimony amount shall <u>not</u> be subject to modification by either party or any court, <u>except only</u> (a) in the event of Husband's disability or reduction in Husband's income, for any reason, by 10% or more[.]  In such event, the parties shall attempt to renegotiate the amount, if any, of Husband's then remaining obligation for payment of Alimony, if any, to Wife.  If agreement

- 5 -

cannot be reached within thirty (30) days, Alimony will be reduced proportionately to Husband's income reduction (due to disability or otherwise) until and unless otherwise required by the Court.

Property Settlement Agreement, 5/8/14, at ¶ VII (emphasis in original).

The parties' PSA does not define "income." Where a modification provision of an alimony agreement does not expressly identify the sources of income to be considered by the court to calculate income in a given year, a court may look to the relevant Divorce Code provisions for guidance. *Stamerro v. Stamerro*, 889 A.2d 1251, 1261 (Pa. Super. 2005). Here, the trial court imported the definition of "income" from the Domestic Relations Code, which provides as follows:

> **"Income."** Includes compensation for services, including, but not limited to, wages, salaries, bonuses, fees, compensation in kind, commissions and similar items; income derived from business; gains derived from dealings in property; interest; rents; royalties; dividends; annuities; income from life insurance and endowment contracts; all forms of retirement; pensions; income from discharge of indebtedness; distributive share of partnership gross income; income in respect of a decedent; income from an interest in an estate or trust; military retirement benefits; railroad employment retirement benefits; social security benefits; temporary and permanent disability benefits; workers' compensation; unemployment compensation; other entitlements to money or lump sum awards, without regard to source, including lottery winnings; income tax refunds; insurance compensation or settlements; awards or verdicts; and any form of payment due to and collectible by an individual regardless of source.

23 Pa.C.S.A. § 4302. Tax definitions of income are not controlling with respect to defining income under the Domestic Relations Code. *Darby v. Darby*, 686 A.2d 1346 (Pa. Super. 1996).

Husband sought a prospective reduction of his alimony obligation because his 2016 income had allegedly decreased by over 10% from the benchmark of $740,000.00.[2]  Specifically, Husband asserts that he earned 23.45% less, or $564,466.00, in 2016.  As proof of that reduction in income, Husband submitted his 2016 K-1 form provided to him by his law firm, Pepper Hamilton, LLP.  Husband asserts that the amount set forth in Box 1 of his K-1 ("Ordinary business income"), or $564,466.00, was the full extent of his income for the year 2016.  Husband did not submit his 2016 tax return, as it had not yet been prepared.  Husband also submitted his monthly pay stubs for the year 2016; the income reflected in those documents totaled slightly over $490,000.00.  Husband, who appeared *pro se*, submitted his pleadings in lieu of direct testimony.  He did not present any expert testimony from an accountant or other tax professional.

The trial court concluded that Husband did not meet his burden of proving that his income had fallen by 10%.  In particular, the court noted that, in prior years, the income reflected on Husband's tax returns was substantially higher than that indicated in Box 1 of his Schedule K-1.  Without a 2016 tax return, the court concluded that it possessed an incomplete picture of Husband's income for that year.  Moreover, the court deemed Tillery's

---

[2] Although the PSA does not specify $740,000.00 as the agreed-upon point of reference for purposes of determining whether Husband is entitled to a reduction in alimony, the parties agree that this is the operative number.

testimony to be incredible. Accordingly, the court denied relief. Upon review, we can discern no abuse of discretion.

As noted above, Husband presented no direct testimony in support of his petition to modify alimony. Rather, he opted to rest on the averments contained in his petition and submitted several documents purporting to demonstrate his 2016 income. However, these documents are inconsistent in their portrayal of Husband's income. Husband's petition averred that his 2016 income was $603,000.00. Box 1 of his Schedule K-1 – which Husband claims is controlling – reflects "ordinary business income" of $564,466.00. Husband's 2016 paystubs total slightly more than $490,000.00. Box 19 of Husband's K-1 showed "distributions" in the amount of $690,728.00. Despite the lack of consistency in the documentary evidence of his income, Husband did not offer any expert testimony to support his contention that the amount shown in box 1 of his K-1 constituted the total amount of his 2016 income.[3] On cross-examination, Husband acknowledged that his pay stubs, which he presented as evidence of his income, did not reflect the entirety of his income for

---

[3] In a footnote to the argument section of his brief, Husband points out that "[p]ublicly available bios of the Master and the Trial Court evidence no special education, experience or expertise in accounting, bookkeeping and/or tax law. The simple explanation of this erroneous decision is that, with respect, neither understood the K-1 form." Brief of Appellant, at 37 (emphasis in original). We note that support masters and common pleas court judges are neither required nor expected to possess expertise in the complexities of tax law and accounting. The purpose of an expert witness is to educate the finder of fact in areas of specialized knowledge beyond that possessed by a layperson. **See** Pa.R.E. 702. Here, where it was Husband's burden to produce evidence in support of his claim and he opted not to do so, complaints regarding the trial court's lack of tax expertise fall flat.

calendar year 2016 and attempted to explain the discrepancy. The following exchange took place:

Q: Now, in the pay stubs you presented, do you get paid a distribution in January that is for the prior year?

A: Not in January, no. It usually comes around March sometimes. Sometimes they give a little bit out in January. But, no, it's standard. That's why the distributions on these K-1s are larger than the actual amounts on the pay stubs, because the way a law firm like ours works is they hold back a significant amount of money to make sure that they can pay all their extra bills, make sure that their final accounting according to the accountants goes well. So you don't – they don't distribute every last dollar before December 31st. It would be unwise.

So once PricewaterhouseCoopers does their final accounting, and as per law in late March, they issue a K-1. **At that point and at that point only, do I know what I actually made for the year before, and therefore, that's what Pepper Hamilton knows and can issue a check for the balance, which is why it's called a distribution**.

It's not income in that year, because it was income earned in the previous year and taxed and taxable in the previous year, but physically distributed in the next year. **That's why the distribution, you'll see on the K-1s, is different from the actual amount on the pay stubs**.

Q: So if we look at your 2016 K-1 . . . Mr. Tillery, I want you to look at box L in the bottom left-hand corner under withdrawals and distributions. Do you see that?

A: I see that, yes.

Q: And that shows that you withdrew or were distributed $690,728. Do you see that?

A: Yes. That's $490,282 of income from the previous year, plus 200,000 – I'm sorry – from that year, plus $200,446 from the previous year which was earned in the previous year, taxed and taxable in the previous year, but only distributed, as I explained, in the year 2016.

The IRS requires you to identify monies that are distributed even though they're income from a prior year when they were taxed. So that's the difference.

Q: But I believe you told this [c]ourt a moment ago that the distribution that is made in March that's done after the audit is for the prior year.

A: Yes. And that's what I'm trying to explain, Counsel. The $200,466 in line L, withdrawals and distributions, of that [$690,728] of that $200,466 was a distribution of income for 2015 earned and taxed and taxable in 2015. So that's the pot of money I'm talking about.

The difference is [$490,282] which was actually earned in 2016; so that's why there's a difference between the number [$690,728] in L and the actual income in lines 1, [$564,466] and also repeated in 14A of [$564,466]. That's my income for 2016.

Q: If this [c]ourt doesn't accept that testimony – and just follow me here – and the [$690,728] is what you received in withdrawals and distributions on your K-1, that's not ten percent – let me finish – that's not a ten percent reduction, is it?

A: It's not testimony, it's the law. It's the law –

Q: Sir, sir, will you agree with me that [$690,728] is not a ten percent reduction?

A: It's not a ten percent reduction from 740, no, it's not, of course not. Do the math. But it's not income.

N.T. Hearing, 6/19/17, at 64-68 (emphasis added).

Based upon the foregoing testimony, it is apparent that, in addition to the monthly earnings reflected in his pay stubs, Husband received lump sum distributions, in January and March 2016, that are not accounted for by his

pay stubs. Rather, the only document that reflects Husband's receipt of those lump sums is his K-1, at boxes 19 ("Distributions") and L[4] of his K-1:

> Q: And [Box L] shows that you withdrew or were distributed $690,728. Do you see that?
>
> A: Yes. That's $490,282 of income [from 2016] plus $200,446 from the previous year which was earned in the previous year, taxed and taxable in the previous year, but only distributed, as I explained, in this year 2016.

*Id.* at 66.

Husband argues that, because the lump-sum distribution of $200,446.00 was considered "income" for tax purposes in 2015, it should not be deemed as 2016 income for purposes of calculating his alimony obligation for that year. However, as previously noted, tax definitions of income are not controlling with respect to defining income under the Domestic Relations Code. *Darby*, *supra*. Husband concedes that his "distribution" for the year 2016 was $690,728.00. *See* N.T. Hearing, *supra* at 65-66. Under section 4302, distributive share of partnership gross income is includable as income for purposes of the Domestic Relations Code. Accordingly, the trial court was within its discretion to consider it as such.[5] Husband's 2016 distribution of

---

[4] Box 19, "distributions," reflects the same amount.

[5] The trial court also included "Tax exempt income and nondeductible expenses" (box 18, in the amount of $6,833.00) and "Other deductions" (lines 13A and 13B, in the amounts of $3,232.00 and $86,025.00) in calculating Husband's total 2016 income. Based upon our review of the record, it appears that the sum of $86,025.00 represents Husband's contribution to his retirement account; the source of the remaining amounts is unclear. Because

$690,728.00 is only 6.7% less than the agreed-upon benchmark of $740,000.00. Accordingly, because it is apparent that Husband's 2016 income did not represent a decrease of 10% or more, the trial court did not err in declining to grant a downward adjustment in Husband's alimony obligation.

Husband also challenges the trial court's affirmance of the support master's determination that Husband earned $786,818.00[6] in the year 2016. Once again, Husband is entitled to no relief. As petitioner, Husband bore the burden of proving the extent of his income. However, as discussed above, Husband presented no evidence, other than his own testimony – specifically deemed not credible by the trial court – that the amount set forth in box 1 of his Schedule K-1 represented the entirety of his 2016 income. Based on the dearth of credible evidence presented by Husband, the master and the trial court concluded that he was not entitled to relief. "[A] master's report and recommendation are to be given the fullest consideration, especially on the issue of the credibility of witnesses." *Moran v. Moran*, 839 A.2d 1091, 1098 (Pa.Super.2003). We must accept these findings where, as here, we find no evidence that the conclusions of either the hearing officer or the trial court were reached as the result of partiality, prejudice, bias, or ill-will, nor was the

Husband presented no expert tax testimony to explain the significance of those sums, it is unclear to this Court whether they properly represent income to Husband. However, even assuming, *arguendo*, that they do not, Husband has failed to establish a 10% decrease in his income.

[6] This sum was calculated by adding the amounts set forth in boxes 13, 18 and 19 of Husband's 2016 Schedule K-1.

law overridden or the judgment exercised manifestly unreasonable. *Kraisinger v. Kraisinger*, 928 A.2d 333, 344 (Pa. Super. 2007).

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/31/18