J-S37001-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| MICHAEL MCSHANE | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LORI MCSHANE | : | No. 3708 EDA 2018 |

Appeal from the Order Entered January 15, 2019
In the Court of Common Pleas of Bucks County
Civil Division at No(s):  A06-16-60672-D

BEFORE:  BOWES, J., KUNSELMAN, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY BOWES, J.:                    **FILED NOVEMBER 26, 2019**

Michael McShane ("Husband") appeals from the January 15, 2019 order[1] that required him to pay Lori McShane ("Wife") $2,500 per month pursuant to the parties' marital settlement agreement ("MSA").  We affirm.

Husband and Wife married in 2007 and divorced in 2016, with Wife remaining in the marital residence with their child, A.M. (born in 2007).  The parties' economic issues were resolved by the MSA, which was incorporated

---

[1] The trial court orally entered its order at the conclusion of a hearing on November 27, 2018, and Husband filed a notice of appeal on December 20, 2018.  However, the order was not appealable at that time as it had not been entered on the docket.  ***See*** Pa.R.A.P. 301(a) ("[N]o order of a court shall be appealable until it has been entered upon the appropriate docket in the lower court.").  This Court, therefore, instructed the trial court to enter the order in compliance with Rule 301(a), which it did on January 15, 2019.  We deem Husband's notice of appeal to have been properly filed from the January 15, 2019 order pursuant to Pa.R.A.P. 905(a)(5) ("A notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof.").

into the divorce decree. Relevant to this appeal, the MSA provided as follows regarding Husband's monthly payments to Wife:

## II. SUPPORT AND ALIMONY

. . . .

### B. CHILD SUPPORT

Beginning on the first of the month after the execution of this Agreement, [Husband] shall pay to [Wife] the total monthly sum of two-thousand five hundred dollars ($2,500.00) for the support of [A.M.]

### C. ALIMONY, SUPPORT AND MAINTENANCE

In consideration of the mutual covenant and agreement of the parties voluntarily to separate and to live separate and apart, and in consideration of the other provisions of this Agreement for the respective benefit of each party, each party hereby waives and relinquishes any claim which he or she may have against the other party for alimony, or for spousal support, or for support and maintenance, (whether temporary, *pendente lite*, rehabilitative, indefinite, permanent, lump sum, or any other kind, nature or description), now or in the future, in this or in any other jurisdiction. The parties understand that the waiver of alimony herein set forth is final and irrevocable, and that no court shall have the power to modify this paragraph by the restoration of alimony to either party, or otherwise.

## III. DISTRIBUTION AND RESPONSIBILITIES REGARDING PROPERTY

### A. WAIVER OF EQUITABLE DISTRIBUTION

Except as otherwise expressly provided in this Agreement, each party releases and waives any claim he or she may have against any income, asset or property, real or personal, now owned or hereafter acquired by the other. This Agreement is intended as an agreement settling and disposing of all property rights contemplated under 23 Pa.C.S.A. §§ 3501 *et seq*.

### B.   **MARITAL RESIDENCE**

1.   The parties acknowledge that they owns [*sic*] real property . . . (hereinafter referred to as the "Marital Residence") that has a mortgage of approximately $254,627.17 . . . in Husband's name.

2.   The parties agree that Wife will continue to reside in the Marital Residence for up to three (3) months following the first of the following events: the parties' daughter, [A.M.], reaching the age of eighteen (18), [A.M.] beginning college and/or [A.M.] moving out of the Marital Residence.  . . .

. . . .

4.   Husband shall provide to Wife ongoing monthly support pursuant to Section II, *supra*, and as such Wife shall be solely responsible for the payment of all expenses associated with the Marital Residence, including, without limitation, the mortgage, taxes, insurance, utility charges, repairs, claims, damages and all other expenses which may occur as a result of her occupancy of the residence.  **In the event that Wife fails to make such payments, then Husband shall be entitled to, at his election, cease payments to Wife pursuant to this Agreement.**  *See* Section II, *supra*.

MSA, 7/29/16, at 10-13 (emphasis added).

According to the trial court and the parties, on July 20, 2018, Husband had filed a petition for child support, purportedly on behalf of Wife, to obtain a ruling from the court that the $2,500 monthly payment required by the MSA constitutes child support and is thus modifiable.[2]  On August 20, 2018, Wife responded with a petition for contempt and enforcement of the MSA,

_____

[2] Husband's petition does not appear on the docket of the instant case, nor is it in the certified record.  Accordingly, Husband's petition is not before us in this appeal.

countering that the payment for maintenance of the marital residence was separate and apart from Husband's child support obligation, that it should not be modified by a child support order, and that circumstances do not warrant modification of the MSA.

The court held a hearing on the matter on November 27, 2018, at which Wife testified, over Husband's objections based upon the parol evidence rule, that she waived any claims for alimony or a share of the marital portion of Husband's pension, retirement, or savings in exchange for his agreement to pay her $2,500 each month. N.T., 11/27/18, at 22-23. Wife further indicated that she and Husband structured the agreement so that A.M. would be able to stay in the marital residence until she finished high school. *Id*. at 5-6, 12-13. Husband's testimony largely confirmed Wife's representations, but he claimed that "he was 'being taken advantage of' because he would provide for the child beyond the $2,500 per month in the form of clothes and sneakers." Trial Court Opinion, 3/18/19, at 6 (citing N.T., 11/27/18, at 29-30). Husband additionally expressed his belief that his monthly payment should be reduced because he has another child with his current spouse. *See id*.

At the conclusion of the hearing, the trial court concluded that the intent of the parties, gleaned from the language of the agreement itself and from the testimony of the parties, was "to avoid a child support obligation with the courts, and instead, have [Husband] pay the sum of $2500 to [Wife], which included child support." N.T., 11/27/18, at 44. Ruling that the obligation was

"not subject to modification under these circumstances," the court ordered Husband to continue paying Wife pursuant to the agreement. *Id*.

Husband filed a timely notice of appeal, and both Husband and the trial court complied with Pa.R.A.P. 1925. Husband presents the following questions for our determination:

> 1. Whether the trial court abused its discretion when it effectively held that the child support figure contained in the parties['] [MSA] could never [be] modified thereby violating the child's right to a decrease or increase in child support when it upheld the [MSA] figure and failed to consider the evidence of the parties['] employment, income, and expenses establishing a change in circumstances and therefore a lower guideline support obligation.
>
> 2. Whether the trial court abused its discretion when it allowed and used testimony from [Wife] as to the intent of the parties in reaching the amount of the child support obligation and other financial terms contained in the [MSA] when the [MSA's] provision on child support was clear and unambiguous.

Husband's brief at 5 (unnecessary capitalization omitted).

We begin with our standard of review. "On appeal from an order interpreting a [MSA], we must determine whether the trial court committed an error of law or an abuse of discretion. We do not usurp the trial court's fact-finding function." *Tuthill v. Tuthill*, 763 A.2d 417, 419 (Pa.Super. 2000) (*en banc*) (cleaned up). "A finding of abuse of discretion requires proof of more than a mere error in judgment, but rather evidence that the law was misapplied or overridden, or that the judgment was manifestly unreasonable or based on bias, ill will, prejudice or partiality." *Bienert v. Bienert*, 168 A.3d 248, 253 (Pa.Super. 2017) (internal quotation marks omitted).

- 5 -

Next, we examine the applicable substantive law. Pursuant to the Divorce Code, generally speaking, the parties to a MSA may seek to have the court enforce the agreement the same as if it had been an order of court. 23 Pa.C.S. § 3105 (a). Some terms of a postnuptial agreement are always subject to modification, while others are modifiable only if the agreement so provides. Specifically, § 3105 provides as follows:

> **(b) Certain provisions subject to modification.**--A provision of an agreement regarding child support, visitation or custody shall be subject to modification by the court upon a showing of changed circumstances.

> **(c) Certain provisions not subject to modification.**--In the absence of a specific provision to the contrary appearing in the agreement, a provision regarding the disposition of existing property rights and interests between the parties, alimony, alimony *pendente lite*, counsel fees or expenses shall not be subject to modification by the court.

23 Pa.C.S. § 3105.

The MSA at issue does not contain a provision for court modification.[3] Hence, whether the $2,500-per-month-payment provision is subject to modification by the court depends on whether it is child support. To answer that question, we must interpret the terms of the MSA, mindful of the following principles.

Interpretation of a postnuptial agreement is a question of law governed by contract principles. *See*, *e.g.*, *Melton v. Melton*, 831 A.2d 646, 653

---

[3] The MSA does provide that it is subject to modification by a writing signed by both parties. *See* MSA, 7/29/16, at 8.

(Pa.Super. 2003). "When interpreting the language of a contract, the intention of the parties is a paramount consideration. In determining the intent of the parties to a written agreement, the court looks to what they have clearly expressed, for the law does not assume that the language was chosen carelessly." **Stamerro v. Stamerro**, 889 A.2d 1251, 1258 (Pa.Super. 2005) (internal quotation marks omitted). "When interpreting agreements containing clear and unambiguous terms, we need only examine the writing itself to give effect to the parties' intent." **Id**. (internal quotation marks omitted).

> When, however, an ambiguity exists, parol evidence is admissible to explain or clarify or resolve the ambiguity. . . . A contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. While unambiguous contracts are interpreted by the court as a matter of law, ambiguous writings are interpreted by the finder of fact.

**Kripp v. Kripp**, 849 A.2d 1159, 1163 (Pa. 2004) (citations omitted).

> In construing the agreement,
>
> > [t]he court will adopt an interpretation that is most reasonable and probable bearing in mind the objects which the parties intended to accomplish through the agreement.
>
> Before a court will interpret a provision in a contract in such a way as to lead to an absurdity or make the contract ineffective to accomplish its purpose, it will endeavor to find an interpretation which will effectuate the reasonable result intended.

**Stamerro**, **supra** at 1258–59 (cleaned up). "Further, a contract must be interpreted to give effect to all of its provisions. Thus, our Court will not interpret one provision of a contract in a manner which results in another

portion being annulled." ***Driscoll v. Arena***, 213 A.3d 253, 259 (Pa.Super. 2019) (*en banc*) (cleaned up).

In his issues on appeal, Husband argues that the trial court erred by considering parol evidence to conclude that the monthly $2,500 payment merely included child support, rather than holding that the MSA unambiguously indicated that the $2,500 payment is wholly modifiable child support obligation, and also in declining to modify the amount based upon Husband's changed circumstances. See Husband's brief at 11-16. Husband contends that the trial court violated A.M.'s rights when it "effectively held" that his child support for A.M. "could never [be] modified." ***Id***. at 5, 11. ***See also Kraisinger v. Kraisinger***, 928 A.2d 333, 345 (Pa.Super. 2007) ("A child's right to adequate support cannot be bargained away by either parent and any release or compromise is invalid to the extent it prejudices a child's welfare.").

The trial court offered the following explanation for its determinations.

> We have to give the agreement between the parties its full effect and meaning based upon the language contained in that agreement which is integrated as the writing between Husband and Wife, and not upon anything beyond the four corners of that writing.
>
> There are two separate provisions within the [MSA]. One is on Page 11 where [Husband] agrees to pay the amount of $2500 for support of a child. On Page 13 of the same agreement, the same amount is to be paid to, quote, provide for Wife's ongoing monthly support. So we have the same amount, the same payer, the same payee. One is couched in terms of support of the child; the other to provide for wife.

It's clear from the reading of this agreement, giving it its logical meaning, that the parties negotiated at arm's length for Wife to remain in the house until [A.M.] reached her 18th birthday, or until majority. [Husband] understood that. He agreed to it. In order for that to be accomplished, for Wife to remain in the house, [Husband] would pay $2500 per month with the caveat that Wife would be responsible for all of the expenses of the marital home, mortgage, taxes, utilities, and if Wife defaulted on an obligation, which she has not, Husband had a remedy, which was to take possession of the house and have it sold, among other remedies.

. . . .

The agreement could have been drafted in a fashion so there was no dispute as to how that money was allocated, but we do note that Wife gave up any opportunity to obtain additional property from Husband; her right to seek alimony. So when we look at Paragraph B on Page 11 it says that [Husband] shall, that means must, pay to mother the total monthly sum of $2500 for support of the child. That seems to be clear in intent.

Then it also states, Page 12, under Paragraph B, Husband's acknowledgement that Wife will continue to remain in the marital residence until [A.M.] reaches majority. That is clear and unmistakable.

And then finally, on Page 13 it says, Husband shall provide to Wife, not to the child or not on behalf of the child, ongoing monthly support, and as such, Wife shall be solely responsible for the expenses for the home.

Now, those two provisions can stand alone, and yet they can be read together to reflect the intent of the parties.

We believe and we find that the credible evidence, after hearing from both [Wife] and [Husband], and in reviewing the agreement, is that the parties, although not in the most artful way, intended to avoid a child support obligation with the courts, and instead, have [Husband] pay the sum of $2500 per month to [Wife], which included child support. So rather than allocate this . . . we will enter the following order: The agreement between the parties is a valid agreement, not subject to modification under these circumstances, and [Husband] shall continue to pay $2500 per month to [Wife] which shall include the addition of the

> payment of [Wife] for the upkeep of the home, a component of child support.

N.T., 11/27/18, at 41-44.

We wholly agree with the trial court's interpretation of the language of the MSA. Although Husband's financial obligation may be identified as child support in one provision of the MSA, construing the contract as a whole, the only reasonable interpretation is that Husband's monthly payment to Wife represents both child support for A.M. and compensation for Wife's waiver of other economic claims she could have pursued in the litigation of the divorce action. Indeed, the provision that we highlighted on page 3, *supra* — that Husband may unilaterally elect to stop paying Wife anything if Wife fails to pay the mortgage and maintain the house — is completely incompatible with Husband's characterization of the payment as child support and child support alone. This Court cannot adopt such an absurd interpretation. *See*, *e.g.*, *Stamerro*, *supra* at 1258–59. Accordingly, the plain and unambiguous language of the contract supports the trial court's conclusion that the $2,500 monthly payment is an unallocated disbursement of both child support and Wife's settlement of her personal economic claims.

As we hold that the intent of the parties is clear from the MSA itself, Husband is correct that parol evidence as to the meaning of the instrument was not properly admitted. *See*, *e.g.*, *Driscoll*, *supra* at 259 ("When a contract is clear and unequivocal, its meaning must be determined by its contents alone.") (internal quotation marks omitted). However, we have no

hesitation in concluding that the evidentiary error was harmless. The testimony of the parties heard and credited by the trial court completely aligned with intent established by the plain meaning of the language of the MSA itself. Consequently, the improperly-admitted evidence did not affect the outcome and warrants no relief from this Court. *See*, *e.g.*, *Conroy v. Rosenwald*, 940 A.2d 409, 417 (Pa.Super. 2007) (noting that an evidentiary ruling must be both erroneous and harmful to the complaining party to constitute reversible error).

Finally, while it is uncontroverted that a portion of Husband's monthly payment is child support, and therefore is subject to modification under 23 Pa.C.S. § 3105(b), we discern no abuse of discretion in the trial court's declining to modify the total amount of support in the instant case. Husband has failed to demonstrate that the trial court's conclusion that Husband's responsibility for a second child and Wife's obtaining employment did not warrant modification of the total amount of support in this case was manifestly unreasonable, based upon bias or ill-will, or the result of misapplication of the law. *See Bienert*, *supra* at 253. Accordingly, we do not disturb the trial court's ruling.

Order affirmed.

Judge Kunselman joins the memorandum.

President Judge Emeritus Ford Elliott concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>11/26/19</u>