J-S13002-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| ASHLEY CRUZ | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| SHANE DOOLEY | : | No. 1860 EDA 2020 |

Appeal from the Order Entered August 25, 2020
In the Court of Common Pleas of Montgomery County Civil Division at
No(s):  No. 2020-03375

| ASHLEY CRUZ | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| SHANE DOOLEY | : | No. 2053 EDA 2020 |

Appeal from the Order Entered September 22, 2020
In the Court of Common Pleas of Montgomery County Civil Division at
No(s):  No. 2020-03375

BEFORE:   OLSON, J., KING, J., and PELLEGRINI, J.[*]

MEMORANDUM BY OLSON, J.:                **FILED AUGUST 13, 2021**

Appellant, Ashley Cruz, appeals from the orders entered on August 25, 2020 and September 22, 2020, finding Shane Dooley (Husband) was not in contempt of a property settlement agreement (PSA) between the parties and denying Appellant's request for the award of attorney's fees.  We affirm.

---

[*] Retired Senior Judge assigned to the Superior Court.

The trial court summarized the facts and procedural history of this case

as follows:

The main focus of this case is the hotly disputed disposition of the former marital residence of the parties located in Montgomery County, Pennsylvania which, at the time of multiple hearings before the [trial c]ourt, was jointly owned by Appellant and [Husband]. The home was purchased shortly after the parties married on August 13, 2015. After several years of marriage, the relationship deteriorated, leading to extensive litigation [], including cross-petitions seeking protection[] from abuse [(PFA)]. After Appellant filed [a PFA] and a hearing was held on February 20, 2020, a temporary [PFA] was entered pursuant to which [Husband] was ejected from the marital residence. That hearing was continued and scheduled for a final hearing on June 30, 2020. Appellant filed for divorce on February 24, 2020.

In the interim, multiple emergency petitions were filed by each party[.] Husband [sought] access to the martial residence to retrieve his personal property and prepare the home to be sold[.] [Appellant sought] Husband's cooperation with the listing and sale of the marital residence[. B]oth parties accus[ed] each other of interfering with [the] sale [of the residence]. On May 19, 2020, [Judge] Virgil Walker [] entered an order permitting Husband to return to the home and requiring Husband to cooperate with the listing for sale of the property. The order provided that, if Husband failed to [] cooperate, [Appellant] was given authority to retain a realtor and list the marital residence for sale. On June 12, 2020, after Husband filed a motion for reconsideration of this order, Judge Walker vacated [the] May 19[, 2020] order, stating that [Appellant] could not list the property *without a hearing on the merits*.

[…O]n June 26, 2020 the parties entered into a [PSA] requiring, in pertinent part, payment of all property expenses pending sale to be made by Husband and the immediate listing of the marital residence for sale with realtor Steve Masterson of Keller Williams Newtown, providing for the disposition of the proceeds of sale between the parties and resolving all claims between the parties. The PSA [] provided that any party breaching the agreement by failing to cooperate with the sale of the property would be liable to the other party for "any and all attorney's fees and costs expended and incurred" by the cooperating party in seeking to

- 2 -

enforce the terms of the PSA, stating that said "fees owed shall be the full amount expended as reflected on the bills submitted to the [trial c]ourt."

Three days later, on June 29, 2020, Appellant filed another emergency petition for contempt, alleging [Husband's] failure to comply with the PSA and his interference with the realtor's attempts to [show and] list [the property.]  After an emergency listing on this petition before Judge Walker on June 30, 2020, *without a hearing on the merits*, Judge Walker signed [Appellant's] proposed order finding Husband in contempt, evicting him from the residence and prohibiting Husband from interfering in any manner with the sale of the residence.  [Judge Walker, however, struck Appellant's request for the payment of attorneys' fees from Appellant's proposed order.]  Husband did not have an opportunity to present his [defense] at the [June 30, 2020 proceeding].

\*          \*          \*

[…]  After the parties entered into the PSA on June 26[, 2020] and Judge Walker issued his order just a few days later on June 30, [2020,] each party filed additional emergency petitions which, [] over the summer while the [trial court] was operating under COVID-19 constraints, result[ed] in two full days of hearings on the merits before [the trial c]ourt.[1]  [The trial court entered an order on] August 25, 2020 [addressing] Appellant's [e]mergency [p]etition for [c]ontempt, [Husband's] [m]otion for [r]econsideration and Appellant's [e]mergency [p]etition for [c]ontempt, [e]nforcement and [s]anctions [] after a full hearing and testimony presented to the [trial c]ourt.  The [trial c]ourt [issued an order on] September 22, 2020 [] after Appellant once again filed an [e]mergency [p]etition for [c]ontempt, [e]forcement,  and [s]anctions and a full hearing was held on September 18, 2020.

Trial Court Opinion, 12/11/2020, at 1-3 (emphasis in original; original footnote incorporated).

---

[1]  These hearings were held before and decided by Judge Melissa S. Sterling. Judge Sterling issued the instant opinion on December 11, 2020.  We refer to Judge Sterling throughout this memorandum as the trial court.

Pertinent to this appeal, the August 25, 2020 order which disposed of several motions filed by the parties, denied Appellant's request to hold Husband in contempt and directed Husband to restore gas and electrical service to the marital property or face a $1,500.00 sanction. Trial Court Order, 8/25/2020, at 1, ¶¶ 2 and 4. Moreover, the August 25, 2020 order denied Husband's request for reimbursement for repairs and renovations he made to the marital home in preparation for its sale. *Id.* at 1, ¶ 5. The September 22, 2020 order "replace[d]" the order entered by Judge Walker on June 30, 2020, which the trial court described as "temporary." Trial Court Order, 9/22/2020, at 1, n.1. The order denied Appellant's request to hold Husband in contempt and directed both parties to cooperate with the realtor, Steve Masterson, in effectuating the sale of the marital property. *Id.* at 1, ¶¶ 2 and 3. The September 22, 2020 order further stated, "[a]ny offer for purchase of the [p]roperty for a price of at least $160,000[.00], containing either no or only customary and reasonable conditions, which is rejected by either [Appellant] or [Husband] shall be submitted to [the trial court] on an emergency basis." *Id.* at 1, ¶ 5. Finally, the September 22, 2020 order directed that Husband "shall continue to maintain all financial obligations and responsibilities related to the [p]roperty and contained in the [PSA] executed on June 26, 2020." *Id.* at 2, ¶ 7.

In its subsequent opinion, the trial court concluded:

All of [the emergency filings] and all of testimony heard at the[] hearings revolved around the petty squabbling of the parties and the blame games they played with one another over the sale of

- 4 -

the residence. Each time there was a filing, Appellant sought a ruling of contempt and additional counsel fees as a method of punishing [Husband] for not doing what she wanted. But the unbiased testimony of realtor Steve Masterson, who both parties agreed to hire, and Judge Walker ordered to pursue the sale of the residence on their behalf, in no way indicated that [Husband] was in contempt of either the PSA or any [c]ourt order. [Husband] had every right to work together with Mr. Masterson to seek a better sale price for the home than the first potential buyer offered. In fact, at an emergency triage hearing before [Judge] Daniel Clifford, Judge Clifford suggested that an increase in $5,000[.00] over the purchase offer should be sought from the potential buyer. [Husband] had moved back into the marital residence, as ordered by Judge Walker, and tried to clean up the home and make much needed repairs, hoping for a higher sale price which would ultimately benefit both parties. This should not have given rise to Appellant filing an emergency petition for contempt. And Mr. Masterson's testimony confirmed that [Husband] cooperated with most requested showings of the house, as contemplated by the PSA. All of these emergency filings by Appellant served only to [consume] the court's valuable time and each allegation therein that [Appellant] was entitled to attorneys' fees cannot be upheld as it [was the trial court's] view that the[] pleadings were not based on events requiring the court's emergency involvement in a long-standing marital squabble. [The trial court opined it could not] sanction any award of counsel fees for enforcement of the PSA as [it did] not find that [Husband] violated the terms of the PSA[,] so there was nothing to enforce.

Trial Court Opinion, 12/11/2020, at 5-6.

Finally, the trial court opined that it did not violate the coordinate jurisdiction rule by entering the orders at issue despite Judge Walker's prior June 30, 2020 order:

[The trial court] believed [an] injustice would have resulted had [it] not ruled as [it] did. Judge Walker issued his June 30, 2020 order in the midst of the COVID-19 pandemic, without a hearing on the merits (which would have given [Husband] an opportunity to respond to Appellant's allegations) based solely upon [Appellant's] filing [] of yet one more emergency petition just days

- 5 -

after the parties allegedly settled their claims through the PSA. By ruling that day, Judge Walker was clearly seeking judicial economy, but was also trying to get the parties to move forward with their agreed-upon goals of the sale of the marital residence and the entry of a divorce decree so that the endless stream of filings, clogging the court's calendar during critical times for the judicial system, could cease and the couple could go their separate ways.

*Id.* at 4-5 (internal quotations omitted; parentheticals supplied). This timely appeal resulted.[2]

On appeal, Appellant presents the following issues[3] for our review:

A. [Whether t]he trial court erred in vacating the Honorable Virgil Walker's order of June 30, 2020, as the trial court had no authority or power to vacate said order[?]

B. [Whether t]he trial court abused its discretion by failing to adhere to the rules governing contract law, failing and refusing

---

[2] On June 26, 2020, the PSA was filed and entered on the docket. On July 23, 2020, a divorce decree was entered, which incorporated the PSA. *See Sneeringer v. Sneeringer*, 876 A.2d 1036, 1038 (Pa. Super. 2005) ("interim matters in divorce actions do not become final until a divorce decree is entered."). On September 23, 2020, Appellant filed a notice of appeal, appealing both the August 25, 2020 order and the September 22, 2020 order. On September 24, 2020, the trial court entered an order directing Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant complied on October 14, 2020, raising 19 allegations of error. As previously mentioned, the trial court filed an opinion pursuant to Pa.R.A.P. 1925(a) on December 11, 2020.

[3] In contravention of our appellate rules of procedure, Appellant presents 18 issues in the statement of questions involved section of her appellate brief, but only three arguments in the argument section. *See* Pa.R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued[.]"). However, because Appellant's three arguments encompass the 18 issues presented we will consider the three claims as argued, because nothing impedes our ability to review them. *See Rock v. Rangos*, 61 A.3d 239, 249 (Pa. Super. 2013), *citing* Pa.R.A.P. 2119(a). We have reordered Appellant's three arguments for ease of discussion.

to enforce language contained in [the parties' PSA] requiring the award of attorney's fees; and, by inserting its own language and interpretation to an unambiguous contract[?]

C. [Whether t]he trial court erred in failing and refusing to award counsel fees to [] Appellant as it was mandated by the language contained in the PSA that Judge Sterling award fees in the amount of $30,000.00[?]

Appellant's Brief at ii.

In the first issue set forth above, Appellant claims that the trial court exceeded its power and authority by vacating the June 30, 2020 order entered by Judge Walker and that in doing so violated the coordinate jurisdiction rule. *Id.* at 31. Appellant posits that Judge Walker's order was not temporary as suggested by the trial court and that "[i]f Husband did not agree with the June 30, 2020 [o]rder, Husband was required to file an appeal, an action which was never taken." *Id.* at 30.

"As with all questions of law, the appellate standard of review is *de novo* and the appellate scope of review is plenary." *In re Wilson*, 879 A.2d 199, 214 (Pa. Super. 2005) (internal citations and footnotes omitted). Our Supreme Court has held:

The coordinate jurisdiction rule prohibits a judge from overruling the decision of another judge of the same court, under most circumstances. There are, however, situations when the rule does not apply.

\* \* \*

The salient case on the coordinate jurisdiction rule is *Commonwealth v. Starr*, 664 A.2d 1326 (Pa. 1995). It states the rule as follows: "[J]udges of coordinate jurisdiction sitting in the same case should not overrule each others' decisions." *Id.* at 1331. "Departure ... is allowed only in exceptional circumstances such as where there has been an intervening change in the

controlling law, a substantial change in the facts or evidence giving rise to the dispute in the matter, or where the prior holding was clearly erroneous and would create a manifest injustice if followed." *Id.* at 1332. The rule serves "not only to promote the goal of judicial economy" but also "(1) to protect the settled expectations of the parties; (2) to insure uniformity of decisions; (3) to maintain consistency during the course of a single case; (4) to effectuate the proper and streamlined administration of justice; and (5) to bring litigation to an end." *Id.* at 1331. It is manifest that a judge may not lightly overrule the prior decision of another judge of the same court. In some circumstances, however, application of the rule can "thwart the very purpose the rule was intended to serve, *i.e.*, that judicial economy and efficiency be maintained." *Salerno v. Philadelphia Newspapers, Inc.*, 546 A.2d 1168, 1170 (Pa. Super. 1988). Thus [our Supreme Court] said in *Starr* that departure from the rule of coordinate jurisdiction is allowed "where the prior holding was clearly erroneous and would create a manifest injustice if followed." [*Starr*,] 664 A.2d at 1332. Applying the rule of coordinate jurisdiction too rigidly, therefore, can undermine the purposes which justify the rule.

*Ryan v. Berman*, 813 A.2d 792, 794–795 (Pa. 2002).

Here, upon our review of the record, Judge Walker entered the June 30, 2020 order, finding Husband in contempt for interfering with efforts to list the marital residence for sale, in contravention of his previous order entered on June 12, 2020, which provided that Appellant could not list the marital home for sale without a full hearing on the merits. The June 30, 2020 order, entered without a full hearing on the merits was, therefore, clearly erroneous. Moreover, as the trial court noted, Husband was deprived of due process when he was not able to respond adequately at a full hearing on the merits before Judge Walker entered the June 30, 2020 order. As such, it was proper for the trial court to overrule the June 30, 2020 order and enter the subsequent orders of August 25, 2020 and September 22, 2020, after full hearings on the

merits of the parties' various emergency petitions. Otherwise, if followed, the June 30, 2020 order would have created a manifest injustice for Husband. Upon our review, we conclude that the trial court did not violate the coordinate jurisdiction rule. As a result, the trial court's subsequent orders properly overruled and vacated Judge Walker's order entered on June 30, 2020. Accordingly, the June 30, 2020 order is effectively null and void. Thus, Appellant's first issue lacks merit.

Appellant's next two issues overlap and are inter-related, so we will examine them together. First, Appellant claims that the trial court violated contract law when it disregarded the plain language of the PSA:

> [The trial court] was prohibited by law to alter the language contained in the PSA; including, but not limited to the insertion of an amount for which the parties had to sell the marital residence. The PSA and Judge Walker's June 30, 2020 [o]rder required the parties to follow the recommendations of the realtor listing the property. The realtor testified that it was his recommendation to accept [an] offer to purchase the property; however, [the trial court] inserted a specific dollar amount for which the property should be sold; thus, disregarding the recommendations of the realtor.

> Additionally, the PSA and [Judge Walker's] June 30[, 2020 o]rder required Husband to immediately maintain all financial obligations relating to the premises. Clearly, Husband failed and refused to comply with the referenced requirement as the utilities had been turned off for months following the entry of the [o]rder and execution of the PSA. This is further exemplified by the August 25, 2020 [o]rder which require[d] Husband to reinstate [gas and electrical] services which Husband was [o]rdered to maintain in June 2020. The PSA was not ambiguous by any means; and, required imposition of attorney's fees if Husband failed to cooperate with the sale, or maintain his financial obligations.

Appellant's Brief at. 27-28. Furthermore, Appellant contends that "the PSA specifically addressed the nondiscretionary award of counsel fees and required that said fees be doubled." *Id.* at 32. As such, Appellant contends that she is entitled to $30,000.00 in attorney's fees. *Id.*

This Court has stated:

Marital settlement agreements are private undertakings between two parties, each having responded to the give and take of negotiations and bargained consideration. A marital [] agreement incorporated but not merged into the divorce decree survives the decree and is enforceable at law or equity.

A settlement agreement between spouses is governed by the law of contracts unless the agreement provides otherwise. The terms of a marital settlement agreement cannot be modified by a court in the absence of a specific provision in the agreement providing for judicial modification.

Established Pennsylvania law states:

When interpreting the language of a contract, the intention of the parties is a paramount consideration. In determining the intent of the parties to a written agreement, the court looks to what they have clearly expressed, for the law does not assume that the language was chosen carelessly. When interpreting agreements containing clear and unambiguous terms, we need only examine the writing itself to give effect to the parties' intent.

In other words, the intent of the parties is generally [expressed in] the writing itself. In ascertaining the intent of the parties to a contract when unclear from the writing itself, the court considers the parties' outward and objective manifestations of assent, as opposed to their undisclosed and subjective intentions. Thus,

[T]he court may take into consideration the surrounding circumstances, the situation of the parties, the objects they apparently have in view, and the nature of the subject-matter of the agreement. The court will adopt an interpretation that is most reasonable and probable bearing in mind the objects which the parties intended to accomplish through the agreement.

- 10 -

Before a court will interpret a provision in ... a contract in such a way as to lead to an absurdity or make the...contract ineffective to accomplish its purpose, it will endeavor to find an interpretation which will effectuate the reasonable result intended.

Additionally, this Commonwealth has accepted the principle in Restatement (Second) of Contracts § 205 that every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement. The duty of good faith has been defined as honesty in fact in the conduct or transaction concerned.

The obligation to act in good faith in the performance of contractual duties varies somewhat with the context, and a complete catalogue of types of bad faith is impossible, but it is possible to recognize certain strains of bad faith which include: evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

A similar requirement has been developed in common law called the doctrine of necessary implication, which states:

> In the absence of an express provision, the law will imply an agreement by the parties to a contract to do and perform those things that according to reason and justice they should do in order to carry out the purpose for which the contract was made and to refrain from doing anything that would destroy or injure the other party's right to receive the fruits of the contract.

Courts employ the doctrine of necessary implication as a means of avoiding injustice by inferring contract provisions that reflect the parties' silent intent. In the absence of an express term, the doctrine of necessary implication may act to imply a requirement necessitated by reason and justice without which the intent of the parties is frustrated.

The duty of good faith and the doctrine of necessary implication apply only in limited circumstances. Implied duties cannot trump the express provisions in the contract. Both the implied covenant of good faith and the doctrine of necessary implication are principles for courts to harmonize the reasonable expectations of the parties with the intent of the contractors and the terms in their contract.

***Stamerro v. Stamerro***, 889 A.2d 1251, 1258–1259 (Pa. Super. 2005)

(internal citations, quotations, and brackets omitted).

Here, the parties voluntarily entered into the PSA, each with the advice

of independent counsel. The agreement was incorporated but not merged into

the divorce decree. Property Settlement Agreement, 6/26/2020, at 2, ¶ 3.

Thus, principles of contract law govern the agreement. Relevant to this

appeal, the PSA provides, in pertinent part:

> v. The property shall be listed for sale for an agreed upon price based upon the suggestions and recommendations of the listing realtor and based upon comparable values determined for the [p]roperty. After the [p]roperty is listed for sale, the parties shall cooperate in any manner necessary to effectuate the sale of the [p]roperty. Neither party shall unreasonably reject any offers made for the purchase of the [p]roperty. Neither party shall unreasonably refuse to execute the sale agreement and/or accept a reasonable offer to purchase the [p]roperty. Both parties shall fully cooperate with the listing agent so as to effectuate the sale of the [p]roperty in an efficient and expedited manner. Any refusal and/or failure to cooperate with the listing agent shall be considered a breach of the within [PSA]. Both parties shall cooperate in any manner whatsoever so as to effectuate the sale of the referenced property.
>
> vi. If either party fails to cooperate, and it becomes necessary to initiate litigation so as to force the non-cooperating party to comply, the non-cooperating party shall be responsible for any and all attorney's fees and costs expended and incurred by the party who is cooperating and who has been forced to request [c]ourt assistance and/or intervention regardless of whether the matter is settled or litigated in before the [c]ourt. The attorney's fees owed shall be the full amount expended as reflected on the bills submitted to the [c]ourt. It is the intention of the parties that the referenced consequence to a party's action not be discretionary. If a party requires [c]ourt assistance to force

> the other party to comply with the within [PSA], payment of attorney's fees and costs shall be awarded and paid to the non-breaching party, provided said actions have merit and were commenced in good faith.

Property Settlement Agreement, 6/26/2020, at 4-5, ¶¶ v.-vi. Moreover, the PSA provides that "[i]f it becomes necessary to file a [p]etition to obtain payment for attorney's fees from the party who failed and refused to comply with the provisions of the within [PSA], the non-compliant party shall be subject to an amount payable which is double the attorney's fees requested." *Id.* at 7-8, ¶ 6b.

Here, after two days of testimony, the trial court determined that Husband cooperated with the realtor to effectuate the sale of the marital home and was not in contempt of the parties' PSA. As set forth above, the PSA provides that "[t]he property shall be listed for sale for an agreed upon price based upon the suggestions and recommendations of the realtor[.]" The parties agreed to list the home for $165,000.00; Husband rejected two offers for the home that were $10,000.00 below that agreed upon price, despite the realtor's recommendation that Husband accept those offers. *See* N.T., 9/18/2020, at 16; N.T., 9/19/2020, at 29. Appellant faults the trial court for assigning a specific value to the home,[4] but it was the parties who agreed to

---

[4] More specifically, the trial court's September 22, 2020 order states:

> Any offer for purchase of the [p]roperty for a price of at least $160,000[.00], containing either no or only customary and reasonable conditions, which is rejected by either [Appellant] or

*(Footnote Continued Next Page)*

sell the marital home for $165.000.00.  Furthermore, while the PSA provides that "[n]either party shall unreasonably refuse to execute a sale agreement and/or accept a reasonable offer to purchase the [p]roperty[,]" the trial court determined it was not unreasonable for Husband to seek the parties' previously agreed sales price.  The realtor testified that, aside from rejecting these two lower offers, Husband had not done anything to obstruct the sale of the home.  *Id.* at 30.  Moreover, there is no dispute that the utilities were re-activated at the time of the September 18, 2020 hearing.  Because he was living at the property at the time of the home showings, Husband asked for 24 hours of notice.  *Id.* at 29.  Husband denied one or two showings because he had to make arrangements to relocate his dog while potential buyers viewed the property.  *Id.* at 33-35; 38.    The realtor also testified that Husband cleaned the marital property.  *Id.* at 32-33.  Based upon our review of the certified record, including the plain language of the PSA and the testimony presented, we discern no error in finding that Husband complied with the terms of the PSA and cooperated with the sale of the marital home. Accordingly, the trial court acted within its discretion, and did not contravene the parties' PSA when it denied Appellant's request to hold Husband in

_____

[Husband] shall be submitted to [the trial court] on an emergency basis.

Order of Court, 9/22/2020, at 1.  Upon review, we reject Appellant's argument that the trial court "inserted a specific dollar amount for which the property should be sold[.]"  Appellant's Brief at 27.  Instead, the trial court provided for additional mediation if the parties could not agree on a reasonable sales price for the marital property.

contempt, together with her demand for attorney's fees for non-compliance with the PSA. As such, Appellant's final two appellate claims lack merit.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/13/2021